## M. V. RACOUILLAT *et als. v.* MANUEL REQUENA, GUARDIAN OF J. L. VIGNES.

DECREE ON DISCHARGE OF GUARDIAN.—The Probate Court may make a final decree discharging a guardian and his sureties from all liabilities already incurred, or to be thereafter incurred, except as to liability to those persons laboring under some legal disability. The rights of such persons are preserved until two years after their disability ceases, whether so expressed in the decree or not.

OATH TO GUARDIAN'S ACCOUNT.—The account of a guardian, in exceptional cases, may be verified by a person other than the guardian, if the guardian also swears that he believes his statements are true.

GUARDIAN AND WARD.—The guardian of an old man may permit the business affairs of the ward to be managed by others than himself, if such persons are relatives and conversant with his affairs, and the children and heirs at law of the ward request it, and no creditor appears to contest the account; but a practice of that kind is not to be encouraged, and is permitted only in exceptional cases.

PAYMENT OF CLAIMS BY GUARDIAN.—It is not necessary that claims against the ward be verified or approved by the Probate Judge before they are paid by the guardian.

PROOF OF LIEN ON REAL ESTATE.—Parol evidence cannot be admitted, if objected to, to show that a written incumbrance exists on real estate.

APPEAL from the Probate Court of Los Angeles County.

The account of the guardian was sworn to by J. L. Sainse-vaine, the gentleman who had principally transacted the business of guardian, and also by the guardian, who swore that he believed that Sainsevaine's statements were true.

The other facts are stated in the opinion of the Court.

*V. E. Howard,* for Appellants.

*Scott, Drown,* and *Lander,* for Respondent.

By the Court, CROCKETT, J.:

The facts of this case are, that in July, 1857, Requena was appointed by the Probate Court guardian for J. L. Vignes, an infirm old man, who was adjudged incompetent to manage his affairs; that instead of taking the personal control of the ward and his estate, the guardian left both, in a great measure, under the management of the two brothers Sainse-vaine, with the consent, as he alleges, of the children and heirs at law of Vignes; that the guardian filed no inventory of the estate of his ward, except as hereinafter stated; nor any account of his guardianship, until the year 1862, after the death of the ward. But in the last named year he filed what purported to be a final account, and asked that it be

settled and allowed. Some of the heirs at law appeared and contested the accounts, on several grounds, and among others, on the ground—first, that the guardian had filed no inven-- tory; second, that his accounts were not properly verified; third, that they were not supported by proper vouchers; fourth, that he had paid demands against the ward which were not justly due; fifth, that some of the items of the account accrued after the death of the ward; sixth, that some of the charges were for moneys alleged to have been advanced by the Sainsevaines, for the ward, and which were improperly credited to them, inasmuch as they were bound by a prior contract with the ward to pay these sums, to exonerate from existing incumbrances a tract of land sold to them by Vignes. On the filing of the exceptions to the accounts, the guardian obtained leave to file, and did after- ward file an inventory of the estate. On the trial of the exceptions it appeared that in the year 1851 Vignes and his children entered into a written contract for the settlement of the claim of the children to one half of the property then remaining in possession of Vignes, which was common prop- erty, and which the children claimed to have inherited from their deceased mother. By the terms of this contract, the children were to receive in cash one half of a stipulated sum, and the remaining half was to remain as a lien on the whole property, or on the purchase money therefor, in case Vignes should thereafter sell the property. We had occa- sion, in *Racouillat* v. *Sainsevaine,* 32 Cal. 376, to expound fully the legal effect of this contract, and in that case we held that it was in effect an equitable mortgage, and bound the prop- erty, or the purchase money therefor, in case of a sale, in the hands of Vignes or a purchaser with notice. It also appears that a portion of this property, and which was known as the "Aliso Vineyard," was afterwards sold and conveyed by Vignes to the Sainsevaines, and that the real consideration of the transaction was a covenant by the Sain- sevaines to pay all existing incumbrances on the property and

to pay Vignes, during his lifetime, an annuity of two thousand five hundred dollars.

On the final hearing, the Probate Court overruled all the exceptions to the account, approved and settled it as rendered by the guardian, and entered a final decree discharging the guardian from his trust, and exonerating him and his sureties "from all liability in the premises." From this decree the contestants have appealed, and the first error alleged is, that the decree undertakes to discharge the guardian and his sureties from all liabilities past and future, instead of limiting it to " all liability to be incurred thereafter."

By section three hundred and seventy of the Probate Act it is provided that " all the laws relative to the accounts of executors and administrators shall govern in regard to the accounts of a guardian, so far as the same can be made applicable ;" and by section two hundred and seventy-nine of the same Act, it is provided that when the estate has been fully administered, and it is shown to the satisfaction of the Court that the executor or administrator paid all sums of money due from him, and has delivered up under the order of the Court all the property of the estate to the parties entitled, and performed all the acts lawfully required of him, " the Court shall make a decree discharging him from all liability to be incurred *thereafter*." Section two hundred and thirty-seven of the Act provides that " the settlement of the account and the allowance thereof by the Court, or upon appeal, shall be conclusive against all persons in any way interested in the estate," saving, however, to persons laboring under any legal disability, their right to proceed against the executor or administrator and his sureties within two years after the removal of their disabilities; and in any action brought by them, the allowance and settlement of the account shall be deemed presumptive evidence of its correctness.

Taking all these provisions together, it is obvious that the settlement and allowance of the account is conclusive on all parties in interest, except those laboring under some legal

disability; and as to those, their rights are preserved by section two hundred and thirty-seven, whatever may be the form of the decree. If the female contestant in this case was under a legal disability, she is not injured by the form of the decree, because her rights are preserved, whatever may be its form; and if the contestants were under no disability, they are properly concluded by the decree, by the express letter of section two hundred and thirty-seven. That portion of section two hundred and seventy-nine which provides that "the Court shall make a decree discharging him from all liability to be incurred *thereafter*," is not very happily expressed. If the settlement and allowance of the account is conclusive, as we have seen, against all the parties in interest, except persons under disability, whose rights are preserved, it is difficult to perceive what liability the executor or administrator *could* thereafter incur from which the decree is to exempt him. If he has fully administered the estate, has paid all sums of money due from him, has delivered up all the property of the estate to the parties entitled, and performed all the acts lawfully required of him as demanded by that section, he would appear to be entitled to an unconditional discharge, and would not need to be protected against liabilities "to be incurred thereafter," for the reason that there could not, in the nature of the case, be any such liabilities. The provision, therefore, exempting him from such supposed liability under the conditions stated, would appear to be superfluous and meaningless, and was, probably, inadvertently inserted in the Act. In our opinion, that provision in the decree in this case which in express terms discharges the guardian and his sureties, is at most only surplusage, and is but expressing in words the legal effect of the decree, which would have had the same operation in law if those words had been omitted.

The next error relied upon is that the guardian's account was not properly verified; but we think it substantially complied with the law, and was sufficient. It is also objected that the guardian did not personally administer the trust,

but permitted the business affairs of the ward to be chiefly transacted by the Sainsevaines. It appears, however, that the Sainsevaines were relatives of the ward, and were not only conversant with his affairs, but when the guardian was appointed the children and heirs at law of Mr. Vignes (except one of them, who was absent) requested that the Sainsevaines be permitted to have the care and custody of the ward, and to look after his business affairs. It appears to have been a sort of family arrangement, dictated, doubtless, by the belief that the old man and his business would be better cared for by his relatives than by a stranger. There is no reason to believe that the guardian acted in bad faith, or otherwise than in accordance with the wishes of the children of Mr. Vignes in this respect, and as no creditor is here complaining of his conduct, we do not consider this fact alone sufficient to invalidate the account. It is only, however, under the peculiar circumstances of this case that we excuse the guardian for allowing the business affairs of his ward to be transacted by others, and would not be understood as sanctioning such a practice, except under extraordinary circumstances.

Another ground of error relied upon is that some of the claims against the estate were paid by the guardian without being properly verified, and without being first approved, either by him or the Probate Judge. If there is any provision of law requiring claims against the estate of a ward to be verified or approved by the Judge before payment, our attention has not been called to it, and we have failed to discover it. As we have seen, section three hundred and seventy provides that all the laws relative to the accounts of executors and administrators shall govern the accounts of a guardian, so far as they can be made applicable. But this has no reference to the proof or verification of the claims against the estate, and is applicable only to the proceedings relating to the mode of settling and allowing the accounts of the executor, administrator, or guardian. Section three hundred and forty-nine of the Act provides that the guardian

shall have the care and custody of the person of the ward and the management of his estate; and the next section provides that he "shall pay all just debts due from the ward out of his personal estate and the income of his real estate, if sufficient; and if not, then out of his real estate, upon obtaining an order for the sale thereof and disposing of the same in the manner provided by law." If there be any provision defining in what manner claims against the estate of the ward are to be established, or requiring them to be verified or allowed before payment, we have failed to discover it.

The principal ground of error, however, urged by the appellant is that in his account the guardian is credited with several large sums paid by the Sainsevaines, which, it is alleged, were liens on the "Aliso Vineyard," and which, under their contract with Vignes, it is insisted they were bound to pay out of their own funds. The first item alleged to be in this category is three thousand dollars, the amount of a promissory note made by Vignes to his daughter Elizabeth, dated in 1852, and the interest thereon, amounting to one thousand nine hundred and fifty dollars. In the body of the note it is recited that it is made in pursuance of the transaction of the 13th March, 1851, evidently referring to the family settlement made on that day between Vignes and his children, in virtue of which, the first payment to be made to Elizabeth was three thousand dollars; and this note was evidently given as an evidence of that indebtedness. In *Racouillat* v. *Sainsevaine,* 32 Cal. 376, we intimated, though it was not necessary to decide the point directly, that the first payment to become due under the family settlement of March 13th, 1851, was not intended to be a lien on the real estate of Vignes; in which event it was not incumbent on the Sainsevaines, under their purchase of the "Aliso," to pay the first installment due to the children. A further examination of the instrument has but confirmed our first impression, and we are satisfied that this note for three thousand dollars was not an incumbrance on the "Aliso," and the

Sainsevaines were, therefore, not bound to pay it. Nor do we find anything in the record to satisfy us that the item of one thousand eight hundred and fifty-one dollars paid to Madame Signe occupied a different position. If this sum was a lien on the "Aliso," which the Sainsevaines were bound to pay, the record fails to disclose the fact. The appellant also claims that the debt to Temple was also a lien on the property, to be paid by the Sainsevaines; but he has failed to direct our attention to the proof of the fact, and after a careful examination of the record we find no evidence of it. It is true that on the trial the contestants offered to prove by the witness Prudhomme that this claim was an incumbrance on the "Aliso," and the Court ruled out the evidence. But if it was an incumbrance, it was not competent to prove it by parol, and the Court properly rejected the evidence.

On the whole, we find no error in the record, and the judgment is affirmed.