280 P.2d 1048

In the Matter of the ESTATE of Lawrence BACHECHI, an Incompetent Person.

Maria BACHECHI and Victor Bachechi, Petitioners-Appellants,

v.

ALBUQUERQUE NATIONAL BANK, Guardian, Respondent-Appellee,

Thelma Bachechi, Intervenor-Appellee.

No. 5856.

Supreme Court of New Mexico.

March 4, 1955.

Hannett & Hannett, Albuquerque, for appellants.

W. A. Keleher, J. C. Ryan, Albuquerque, for respondent-appellee.

Irwin S. Moise, Lewis R. Sutin, Albuquerque, for intervenor-appellee.

McGHEE, Justice.

The mother and brother of Lawrence Bachechi, an incompetent person, appeal from judgment of the lower court upon their petition for accounting by the Albuquerque National Bank, guardian of the estate of the said incompetent, and his wife, Thelma Bachechi. The guardian answered this petition and the wife answered in intervention. The substance of the controversy and the action of the lower court are set forth in the opinion filed by the trial court which is set out in full hereafter.

"The Court has heard the evidence and the arguments of the various counsel representing the guardian, the wife of the incompetent, and the protestants. It has read the various authorities cited by counsel, and has gone through the file.

"It appears that the family of the incompetent was, and is a very industrious unit, and that as a result of the business acumen, industry, and possibly an element of good fortune, a considerable estate has been accumulated by all of the members of the family. From the evidence, it appears that the protestant, Maria Bachechi, made a gift to Lawrence, of at least the basic part of the corpus of the estate in question. This gift was made some quarter of a century ago. Lawrence Bachechi and Thelma Bachechi were married sometime in the year 1934. If Lawrence Bachechi's estate was a gift, it appears to have been given him in fee simple, without any reversion or other contingent phase.

"While the record is barren of specific facts, it is reasonable to assume that the Lawrence Bachechis married for love, enjoyed a period of ten years marriage, and that Mrs. Thelma Bachechi fulfilled her obligations as a wife. In the year 1944 it appears that Lawrence Bachechi suffered a mental ailment, diagnosed by at least one psychiatrist, who appeared at the incompetency proceedings, as schizophrenia.

"The pre-existing partnership, in which Lawrence Bachechi was a member, was terminated, at least as to him, and his share of the partnership was then converted into the assets of the present estate. By 'converted', I mean separated and administered as a unit.

"For a long period of time, Lawrence Bachechi was hospitalized in the State of Colorado, and I believe in California, and was operated on at the Mayo Clinic by some visiting Italian brain surgeon. He was eventually returned to this jurisdiction, and for a period of time, he lived once more with his wife, until a subsequent increase in difficulties required his being placed at the Nazareth Sanitarium. The record is completely void of any evidence of Mrs. Thelma Bachechi being remiss in her duties as the wife of the incompetent. To the contrary, twice a week visits have been made by her to her husband at his present location, and the lady's general course of action appears to be exemplary. I mention this, because poor conduct on the part of the wife of an incompetent has been, in some cases I found in the annotations, a cause of cessation of support money from the estate of an incompetent.

"As sometimes unfortunately happens, certain psychological differences exist between Mrs. Thelma Bachechi, and Mrs. Maria Bachechi, the latter being the mother of the incompetent. Not enough facts were presented for the Court to pass upon the validity of either party's contentions, as between the two, and the Court fortunately is spared this difficult task. While ill-will may, to some extent, motivate the mother in her proceedings herein, the Court finds that each of the protestants is a bona-fide

objector, and on an analogous theory of 'a devil's advocate', will allow the objections to be brought to the attention of the Court.

"The first matter is the purchase, by the estate, of a 1953 Dodge, for a figure in the neighborhood of $2700.00. The Court is of the opinion that there is sufficient use made of this vehicle, for the benefit of the incompetent, to justify its having been purchased from the assets in the estate. An order should be filed in the estate, to the effect that such vehicle is the property of the estate, and that Mrs. Thelma Bachechi is not to mortgage or dispose of the vehicle without obtaining an order allowing her to do so. The objections of the objectors in this regard are overruled.

"The most difficult problem in this case is the matter of support money in the amount of $350.00, which has been paid to the wife of the incompetent for the past two accounting periods. Prior to this payment, the sum of $545.00 was specifically authorized by the Court, to be paid to the wife for her support, and for the wages of an attendant. When the incompetent was sent to the Sanitarium the last time, the attendant, from a regular standpoint, was not necessary, and following a conversation between the wife and the guardian's officers, the sum of $350.00 was commenced to be paid the wife, but no order authorizing such payment, in the beginning was obtained. The payment of such amounts was clearly reflected in the reports for the years 1952 and 1953, which reports were ratified, approved and confirmed by two of the District Judges. While these approving orders may not have the same dignity and force as an initial order authorizing payment, they, at least, are of some effect, and any past payments are not to be surcharged against anyone in this case.

"This leaves the question as to whether continuation of the payments is warranted. The annotations in 5, 59 and 160 A.L.R. appear to authorize the payment of support money for the wife of an incompetent, if she needs support. I have had considerable difficulty in determining whether there is a New Mexico statute specifically covering the matter of support money for dependents of an incompetent. There was read to the Court * * * by the attorney for the Protestants, Section 37–213, N.M.S.A., 1941. A careful study of this statute indicates that it is restricted to persons committed to the New Mexico Insane Asylum. In the forepart of the section, it is recited that the estate and property of an insane person shall be liable to pay for his share of maintenance while confined in said asylum, and a duty devolves on the directors of the institution to collect the costs and charges from the incompetent's estate. There is a provision, then, to the effect that if the patient shall have a wife

dependent upon him, and upon his estate for support, the estate shall first be applied to the support of such dependent, so the dependent shall not become a public charge upon the State or County.

"Section 35–208, under 'Guardian and Ward of Insane and Incompetent Persons', provided that if the guardian has on hand any money belonging to his ward, over and above what may be necessary for the maintenance of the ward and such ward's dependents, the guardian shall loan such money upon such security as the Court may approve. This section, however, was repealed by Chapter 41, Laws of New Mexico, 1951. Unfortunately, when the Uniform Investment Act was adopted by the Legislature, no specific statutory provision was made governing support of a ward's dependents. The Court feels, however, that in the absence of a statute, reasonable support can be required from the estate of an incompetent. Several factors would play a part. First, the needs of the dependent. Secondly, the actions and fidelity of the dependent toward the incompetent, and lastly, the size of the corpus of the estate.

"Under all of the circumstances as adduced at the rather protracted hearing in this matter, the Court is of the opinion that at this time the sum of $350.00 is reasonable. A careful study of the balance sheet of the estate should be made, from time to time, in an effort to maintain, as close as can be done, the size of the estate. The Court, accordingly, will entertain an Order with the following provisions in it, among other things:

"1. An Order listing the automobile as one of the assets of the estate.

"2. An Order confirming past payments of $350.00 a month to Mrs. Thelma Bachechi.

"3. An Order continuing such payments until the further order of the Court. * *"

It is our opinion that the facts narrated in the foregoing opinion are abundantly supported by the evidence in the case and that the lower court was correct in its declarations of law made therein. Certain of the specific contentions of the petitioners and appellants will be briefly noted in following paragraphs. Before proceeding to such discussion, however, it should be stated the court found upon substantial evidence that the estate of the incompetent is of the net book value of approximately $100,000. It also found that because of increase in the value of real estate included therein, the actual value of the estate is approximately $200,000. This increase in value was apparently arrived at by considering evidence of reproduction cost today of a building used as a warehouse situated on certain of the real estate. It is objected there is not sufficient proof of such increase in value. It is unnecessary to determine

whether this latter finding should stand, in view of the fact the petitioners recognize the value of the estate is at least $98,045.94. Also, it is undisputed that in 1953 the interest and rents received upon the estate amounted to $9,284.

The opinion of the trial court makes reference to annotations which set forth cases recognizing the right of the wife of an incompetent to support from his estate: 59 A.L.R. 653 and 160 A.L.R. 1435. The general principles regulating the allowance of such moneys to the wife is well stated in In re Schiess, Sup., 1947, 69 N.Y.S.2d 631, 633, as follows:

"The duty of the court is not only to preserve the property of an incompetent from waste or destruction, but it is also its duty to provide for the safekeeping and maintenance of the family of the incompetent; an incompetent is under a duty, within reasonable limitations, and within his earnings and income, to provide for his family * * and he is thus under a duty to properly provide for the support and maintenance of his wife. * * * (Omitting citations.)

"The question, then, remaining, is the extent of the allowance and the formula to be applied. In this respect it is held that the allowance should take into consideration and be made in the light and upon the theory that the incompetent would, in all probability, have made such payments if he had been of sound mind. * * * The petitioner, as wife of the incompetent, would have been the natural object of his bounty, and as stated in Matter of Farmers Loan & Trust Co., 181 App. Div. 642, 168 N.Y.S. 952, affirmed 225 N.Y. 666, 122 N.E. 880, the court acts in reference to his estate as it supposes the incompetent would have acted if he had been of sound mind."

See, also, 44 C.J.S., Insane Persons, § 90; 25 Am.Jur., Guardian & Ward, § 68; In re Griffith, Del.Ch., 1953, 93 A.2d 920; Thomasson v. Thomasson, 1949, 310 Ky. 234, 219 S.W.2d 957; Martin v. Martin, Ohio App., 1949, 88 N.E.2d 59.

It is complained that the purchase of an automobile by the estate was an unreasonable expenditure. It was established that during the time the wife had the services of a regular attendant to accompany her, she took the incompetent for rides in the automobile on an average of two times weekly. For some three months prior to the time of trial she was unable to secure a regular attendant to go with her upon these excursions, but she was able to procure someone four or five times a month so that the incompetent might be taken out for short drives when his health permitted.

It was also established that the wife used the car for her personal benefit, but there is no showing she made undue use of the automobile or in any way abused her privilege in this regard.

We agree with the trial court that the purchase of the automobile, by the estate was a reasonable and justifiable expenditure by the guardian for the care and comfort of its ward and was reasonably necessary for the support of his wife, considering as it did, the needs of the dependent, the actions and fidelity of the dependent toward the incompetent and the size of the corpus of the estate. The same may be said of a reimbursement made by the estate to the wife for the purchase of a stove and refrigerator of which petitioners also complain.

Petitioners argue here, as they did in the lower court, that the monthly allowance to the wife of $350 is unreasonable—that all she is entitled to is a bare subsistence in order that she shall not become a charge upon the public. In support of this argument they rely upon § 37–213, 1941 Comp., in force until it was repealed by Ch. 182, Laws of 1953, but continued in substance as § 21, Ch. 182, Laws of 1953, § 34–2–21, 1953 Comp. This section is discussed in the opinion of the trial court, but for clarity is quoted here in full, so far as pertinent:

"The estate and property of a mentally ill person shall be liable to pay for his care and maintenance while confined in the New Mexico Insane Asylum, and for the costs and charges of his transportation to the New Mexico Insane Asylum, and it is hereby made the duty of the directors of the New Mexico Insane Asylum to make collection of all said costs and charges from his said estate and property in the hands of any person having charge of the same, including any guardian who may have been appointed to the care and custody of said estate; Provided, however, that if said patient shall have a wife or husband, or a child or children, dependent upon him or her, and his or her said estate for their support, the said estate or property shall first be applied to the support of such dependent, or dependents, so that they shall not become a public charge upon the state or county. * * *"

We are in agreement with the lower court that this enactment is not a declaration of general policy of this state as argued by petitioners. It has no application to the facts before us, but is instead operative when an estate of one committed to the insane asylum is insufficient to both provide the costs of hospitalization and af-

ford the dependents of such person sufficient funds so that they will not become charges of the public.

Considerable argument is made that aside from the statute above the sum of $350 per month is an excessive allowance to the wife for these reasons: The wife has not shown by itemized expense sheets that she spends all of such sum each month for her support; she has two persons living with her in her apartment who pay no rent; she has managed to save $1,000 out of moneys allowed to her from the estate which she carries in a savings account under her own name; out of these monthly payments she has purchased some special foods for the incompetent and supplied him with minor needs in the way of drugs, haircuts, cleaning of his garments, etc., which she had no authority to do; and, lastly, that she has expended money for the purchase of gifts.

■ The finding of the court that $350 was a reasonable sum for the support of the wife is based upon substantial evidence. The $1,000 which the wife saved was accumulated from earlier sums allowed to her by the estate and before the present allowance was commenced. She testified she has been able to do no more than keep such sum intact under her present allowance. While it is true that an estate of an incompetent cannot be depleted and taken to the

account of one of his dependents under the ruse of having received the money for living expenses, nevertheless, it is apparent this sum has been saved as the result of the wife's frugality during a period when she was receiving only $150 or $200 per month for her living expenses—she holds the sum for use in case of emergencies. Under these circumstances we cannot say the trial court was in error in ordering the continuance of the payment of such monthly sum to her.

■ It is contended that the wife should not allow a couple to live with her in her home rent free and it is said she pays for their utilities. The wife pays $65 per month for a two-bedroom unfurnished apartment. This sum includes utilities. Her rent is made no higher because of the fact others live with her and they are regarded by her as companions. We see no damage to the estate in such an arrangement.

■ It is apparently the view of the petitioners that as the mother of the incompetent was appointed guardian of his person when he was committed to a hospital for treatment in Colorado by Colorado courts, that the wife has no right to provide anything for his personal care and comfort either out of the funds she receives for her support, or out of the estate. The argument is devoid of merit on

both legal and humane grounds. 25 Am. Jur., Guardian and Ward, § 215.

As noted above, complaint is made that the wife expended the sum of $300 in 1953 for an antique table and two scatter rugs and for various Christmas and birthday gifts made to others than her husband, the incompetent. These gifts were made out of the allowance to her for her monthly support. So long as such allowance is reasonable, it cannot be the concern of the estate that no portion of it shall be expended for anything except the bare necessities for her survival. These expenditures are reasonable so long as based upon and taken out of the reasonable monthly allowance.

The fact that the monthly allowance of $350 was made without prior authorization to the guardian does not prevail against its propriety where such expenditure is found to be reasonable and necessary. Stroope v. Potter, 1944, 48 N.M. 404, 151 P.2d 748; In re Hunter's Guardianship, 1941, 45 N.M. 113, 111 P.2d 862. It should be stated, however, that the obtaining of prior authority is the only safe and proper practice.

Other minor contentions are made by petitioners, but we find them without merit. The judgment should be affirmed and it is so ordered.

COMPTON, C. J., and LUJAN, SADLER, and KIKER, JJ., concur.