[No. 21480. Department One. April 16, 1929.]

*In the Matter of the Guardianship of* E. L. WILBER.[1]

*Henderson, Carnahan & Thompson,* for appellants.
*Troy & Yantis,* for respondent.

TOLMAN, J.—Edwin L. Wilber, a veteran of the civil war and a pensioner of the government, was an inmate of the state soldiers' home at Orting prior to June 24, 1923. At that time he was taken to the home of his son, A. E. Wilber, in Cowlitz county, where he remained as a member of his son's family until February 18,

[1]Reported in 276 Pac. 876.

1924, at which time he was returned to the soldiers' home at Orting.

Thereafter, in April, 1924, the son, A. E. Wilber, the respondent herein, filed a petition in the superior court for Cowlitz county; alleged that Edwin L. Wilber was a resident of Cowlitz county, eighty-seven years of age, "and that by reason of his age and senile decay he is incompetent to transact any business." It was further alleged that the elder Wilber had no property; that his only resource was a pension of seventy-two dollars per month from the Federal government, and that it was necessary that a guardian be appointed "to receive and receipt for said pension and to handle the same in the interest of the said incompetent." The prayer was for the appointment of the son as the guardian of the person and estate of the father.

On May 27, 1924, the appointment was duly made and thereafter the guardian qualified and letters issued. Nothing further appears to have been done in the guardianship proceedings during the life time of the ward.

In October, 1927, appellants filed their petition in the guardianship proceeding, alleging that the ward died at the home in Orting on June 19, 1926; that they had been duly appointed and were the qualified and acting administratrices of the estate of the deceased ward, and that the guardian had, during the life time of the ward, received the ward's pension money to the amount of $1,872, for none of which had he accounted. The prayer was for a show cause order, which issued accordingly.

Before a hearing on the show cause order, the guardian filed his final account and petition for discharge, and also a supplemental final account, to which written exceptions and objections were filed and the whole matter came on for hearing.

The trial court charged the guardian with $1,872, received as pension money, credited him with $1,241.40, and directed that he pay the balance of $630.60 into the registry of the court. The petitioning administratrices have appealed.

It is first contended that no credits should have been allowed to the guardian because he presented no vouchers covering disbursements as required by Rem. Comp. Stat., § 1575. Our statutes do require vouchers to be presented, but it is nowhere provided that a failure to present vouchers shall work a forfeiture or bar the allowance of expenditures properly and actually made. The general rule seems to be:

"Proper vouchers are ordinarily required to be furnished with each item of expenditure, although they may be dispensed with in a clear case, where there is no doubt of the expenditures having been made, nor of the guardian's good faith." 28 C. J. 1213, § 371.

We think, especially in cases like this, where the personal representative or guardian is of humble attainments educationally and without business training, that lack of system should not be permitted to work actual injustice.

It is next urged that all of the expenditures made before the appointment of the guardian should be disallowed.

Such prior expenses were not guardianship expenses in any sense of the word, but were only such as an able-bodied son might make on behalf of an old and feeble father who was a member of his family. Especially is that true here where the father admittedly had no property and nothing for his support but his pension. The son is now claiming that, in addition to spending the pension money received during the eight months that the father was in his home, he should be allowed for other and further expenditures on behalf

of the father and for services in caring for him, during that same eight months, a sum vastly greater in amount than the total pension money received during that period. Both father and son knew that the pension was the only income available; and if the son, who was in a position to exercise some control over the situation, permitted and assisted in spending the pension money and then spent two or three times that amount in addition, it must be presumed in doing so he was prompted by filial duty. *Olsen v. Olsen,* 90 Wash. 174, 155 Pac. 747.

Moreover, the claim antedating the guardianship was such a one as should have been presented to the court for allowance, and the guardian cannot take advantage of his own wrong in failing to publish notice requiring claims to be presented within the statutory time. But if none of these reasons be sufficient, the claim was contracted before the guardianship, the statute then began to run and the claim is now wholly barred by the general statute of limitations.

Objections are urged to some of the other items allowed by the court, but after a careful study of the whole record we are satisfied that we would not be justified in disturbing any of them.

The judgment is reversed, with directions to disallow all items for expenditures and services incurred prior to the initiation of the guardianship proceedings.

MITCHELL, C. J., FULLERTON, HOLCOMB, and BEALS, JJ., concur.