**151 P.2d 748**

**STROOPE v. POTTER et al.**

**Nos. 4770, 4771.**

Supreme Court of New Mexico.

Sept. 14, 1944.

Seth & Montgomery, of Santa Fe, and A. H. Hudspeth, of Carrizozo, for appellant.

John E. Hall, of Carrizozo, for appellees.

MABRY, Justice.

By stipulation of parties and with consent of the trial court, the two cases herein were combined for trial and for purposes of appeal. In Cause No. 4771 (No. 4933 in the District Court) we have a proceeding instituted in the District Court of Lincoln County by Florence Stroope Potter, the stepmother (hereinafter to be referred to as Appellee, or Mrs. Potter) as guardian of Velma Livina Stroope (hereinafter to be referred to as Appellant, or Velma), a minor, for the sale of such minor's interest in certain patented land and a forest permit appurtenant to such real estate. In Cause No. 4770 (No. 4945 in the District Court) we have a proceeding instituted in the District Court of Lincoln County on behalf of the said minor, Velma, by her guardian ad litem, against the said guardian, Mrs. Potter, and the latter's present husband, John W. Potter, to whom the stepmother was married after the death

of the minor's natural father, Albert Stroope. This latter action is one seeking an accounting from Mrs. Potter during the time she was administering the estate of her deceased husband, Albert Stroope, and as guardian of the said Velma Stroope, from the time of the death of Albert Stroope until the time of the hearing of the Cause in the District Court. The cases present many facts in common and can be appropriately considered here together.

Briefly stated, there is involved in the first appeal hereinbefore mentioned, No. 4771, the question of whether certain patented land and a forest permit used in connection therewith is the separate property of Mrs. Potter or whether it is either of the separate estate of Albert Stroope, deceased, or the community property of the deceased and Mrs. Potter. The trial court held that such real property, including the forest permit employed in conjunction therewith, was the sole and separate property of Mrs. Potter; that it was purchased by the husband and conveyed to her as a gift at the time of the purchase; and that the said minor child, Velma, had no interest in such property. The land and forest permit involved in this appeal were ordered sold and by stipulation of the parties a sufficient amount of the purchase price placed in escrow to be held for disbursement by the escrow holder under order of the District Court as the interest of the parties, Mrs. Potter and Velma, might appear as a result of the decision of this Court flowing from the appeal. By agreement

entered into by all parties, confirmed by the trial court, it was shown to be for the best interest of the minor ward that the portion of the ranch in which she admittedly had an interest should be sold together with the other portion, that claimed, and found by the court to be, exclusively the property of Appellee, that a better price could be obtained. There is no disagreement over the fact of such sale or the price received for all tracts of land covered thereby, and the grazing permits going with the sale.

As to the appeal in Cause No. 4770 there is involved, as we have said, an accounting whose correctness is challenged on the part of the stepdaughter, Velma. This dates from the time of the death of Appellee's former husband and her appointment as administratrix, July 1, 1932, to March 23, 1942, a period of some ten years. The court held as to Cause No. 4771, as we have noted, that the ranch property was the separate estate of Appellee, Mrs. Potter, both as to the patented land and the forest permit appurtenant thereto, so far as it pertained to the 160 acres of patented land and permit purchased from the brother of Albert Stroope, one Ab Stroope, and allegedly conveyed to Mrs. Potter, the wife of Albert Stroope, at the time. And, as to another and separate portion of the ranch consisting of 240 acres, and a similar acreage of forest permit appurtenant thereto and supported thereby, this was, in that cause, held to be the separate estate of Albert Stroope, the deceased husband and father of the minor, in which Velma, one of the two children, would share to the extent of a three-eighths interest. There is no dispute concerning the correctness of the court's holding in respect to this latter ranch with the forest permit appurtenant being the separate property of Albert Stroope in which the wife would participate to the extent of only one-fourth interest, 1941 Comp. Sec. 31-110, with the two children receiving the remaining three-fourths interest. Incidentally, the other sister, Hivana, upon becoming of age, sold her entire interest and right to participate in the estate to her stepmother, Mrs. Potter, and such interest is not involved in either appeal.

There are seventy-one assignments of error, reduced, when combined for notice and argument, to five specific points. These are: (I) The findings and conclusions do not comply with the rule of this court. (II) The land and forest permit acquired from Ab Stroope by Albert Stroope were the separate property of the latter and Appellant was entitled to an undivided three-eighths interest therein; and the court erred in holding this land and permit to be the separate property of Appellee. (III) The court erred in holding that all the sheep and other personal property owned by Albert Stroope at the time of his death were community property. (IV) The court erred in refusing to require the Appellee to account for the sheep, to bring the account down to date, and in refusing to appoint a receiver of the sheep or require additional security for the protection of

the ward. (V) The question of the accounting.

We notice first Point I, and hold that the findings of fact and conclusions of law, as here made by the trial court, are in sufficient compliance with our rule in this respect. 1941 Comp. Sec. 19-101(52) (B). The findings of ultimate facts could have been more conveniently set out with the omission of many findings which are, unquestionably, of evidentiary facts only. Yet these suits involved a lengthy and intricate accounting, but for which, the findings would doubtless have been more briefly stated and limited to findings of clearly ultimate facts. What are the ultimate and what are evidentiary facts often presents a close question, as this court heretofore observed. Christmas v. Cowden, 44 N. M. 517, 523, 105 P.2d 484. At least it may be said that the decision is contained in a single document and that there are findings of ultimate facts necessary to determine the issues in the case and that each finding and conclusion is separately stated and numbered.

Point II involves the appeal in Cause No. 4771, the land and forest permit acquired from Ab Stroope, the brother. Error is assigned to the court's holding that the land and permit were the separate property of Appellee, Mrs. Potter. Appellant urges upon us consideration of the circumstances that the deed to the 160 acres of land purchased from Ab Stroope and conveyed to her stepmother, was first made to her father, Albert Stroope, as grantee and thereafter the name of the grantee was erased and the stepmother's name inserted in lieu thereof. And this assignment is well taken. While it might be said there is sufficient evidence to support the theory that the intention of both the grantor, Ab Stroope, and Albert Stroope, the grantee first named, was that the conveyance should go to Appellee as her separate property, the evidence is not sufficiently substantial to support the finding that it was actually conveyed to her, rather than to Albert Stroope as attempted by the first draft. When the deed was executed and brought to Albert Stroope and Appellee, his wife, it was in the name of the husband as grantee. He told his brother, Ab, that it should have named his wife, Appellee, as grantee. Later the deed shows up with the name of the wife substituted for his own as such grantee. The date shown in the acknowledgment form was changed to show such acknowledgment taken as of the date of October 30, 1928, instead of September 28, 1928, as the document appeared as having been first acknowledged. It is not clear just what transpired between the date of the first delivery and the time the deed appeared again as changed.

Albert wanted his wife "to have the property"; he wanted to make her a "gift" of it the evidence shows and the trial court so found. He doubtless thought the intention of the parties, grantor and grantee, had been fulfilled when the change of grantee was made by substitution in the deed as

originally executed; but there is nothing to show that the wife of Ab Stroope ever consented to the change or authorized it, certainly nothing to show a re-acknowledgment. Such changes, even though made to carry out the intention of the parties, must be made with the knowledge and consent of all grantors.

There is no showing or contention, that this land, or the permit, were of the separate property of Ab Stroope, hence the joinder of the wife in a conveyance of this acreage, community property, was a prerequisite to a valid conveyance. 1941 Comp. Sec. 65-403; Adams v. Blumenshine, 27 N. M. 643, 204 P. 66, 20 A.L.R. 369; Jenkins v. Huntsinger, 46 N.M. 168, 125 P.2d 327.

Upon the question whether there was a delivery to Albert Stroope of the deed as first prepared and executed the evidence is somewhat indefinite and uncertain, but we can, under the facts, so assume. And, we will so assume in view of Appellant's contention, as shown, in his brief, "that the title conveyed by the deed in question vested in Albert Stroope and that this title was not divested and transferred to Florence E. Stroope by the alteration of the name of the grantee in the deed."

If there had been a refusal to accept the deed at all without the correction Albert desired being made, and the acceptance came only when Florence E. Stroope was named as substituted grantee, the nice question of whether the deed operated to convey to anyone, might arise. But, in view of Appellant's contention that the deed did convey to the grantee originally named and the evidence fairly supporting an interpretation of delivery to him before alteration, we will assume such delivery. Any other interpretation could, possibly, leave title in the grantors, Ab Stroope and wife, who, admittedly, had already been paid and had given possession of the land and permit prior to, or at the time of, the execution and delivery of this muniment of title; and neither party to the controversy is, of course, seeking such result.

"Upon the delivery of an executed deed, the legal title passes to the grantee, and the subsequent alteration of the deed by changing the name of the grantee does not divest the grantee of title or revest title in the grantor. The grantor cannot make any change in the deed after it is delivered to the grantee, even though the deed is a gift. The deed is only the evidence of a conveyance and the cancellation, alteration or destruction of the deed itself affects the evidence, not the title itself." 7 Thompson on Real Estate, Perm. Ed., Sec. 4152.

We find in Sec. 4243 of Vol. 8 of the same text, a statement of the rule, as follows:

"A material alteration made by the grantee does not divest him of the title and revest the title in the grantor, if the grantee's title has taken effect in possession. The changing of the name of the grantee after delivery of the deed does not divest the original grantee of his title so as either to invest it in the new grantee or to revest

it in the grantor. The deed after delivery is an executed instrument, by virtue of which the title has vested in the grantee."

"The destruction of a deed after delivery does not divest the grantee of title whether the deed is destroyed by the grantor or grantee. The cases hold this to be the rule though the destruction is consented to by both parties. The title to the estate which was vested in the grantee by a genuine and valid conveyance remains in him though he destroys or makes void the deed itself by forgery or by voluntary concealment of the conveyance which created the title. * * * When a person has become the legal owner of real estate he can not transfer it or part with his title except in some of the forms prescribed by law. The grantee may destroy his deed but not his estate. He may deprive himself of his remedies upon the covenants but not to his right to hold the property. This distinction has existed from the earliest times." 8 Thompson on Real Estate, Sec. 4244, Perm. Ed.

"It has always been a difficult matter to say exactly what effect an alteration has upon the effect of a deed. The true rule seems to be that if the deed is altered after execution by a party claiming some benefit under it, or by his privity, its operation as an executed contract is not affected. * * * While the language used in many of the decisions taken in its broadest sense, would indicate that a material alteration by the grantee of a deed destroys it, yet it should be borne in mind that it is the deed, and not the title, that is destroyed." Devlin on Real Estate, Vol. I, 3rd Ed., Secs. 460 and 461 (a).

See Mosley v. Magnolia Pet. Co., 45 N. M. 230, 114 P.2d 740, for a discussion of the effect of authorized change in name of grantee in undelivered deed, and upon the question of ratification.

We hold there was no error, under the circumstances, in the trial court's refusal to permit an amendment of the reply to show Albert Stroope took title to the Ab Stroope land as his separate estate. We hold it to be the property of the community, as contended for by Appellant herself at all times during the trial and until after the court had announced its decision and findings.

So, as to this land and the forest permit appertaining thereto, we hold it was the property of the community of Albert Stroope and Appellee in which Appellee shares to the extent of five-eighths and the daughters, Appellant and her sister, three-sixteenths each.

■ Did the court err in holding that all the sheep and other personal property owned by Albert Stroope at the time of his death were community property? We think not. Any argument in support of Appellant's position, under this point, must be based upon the theory that since the deceased husband, Albert Stroope, owned 50 head of sheep at the time of his marriage to Appellee, then all the sheep owned at the time of his death were, under the

circumstances, the increase therefrom or were sheep purchased by the deceased from his own personal funds. The evidence is undisputed that Albert Stroope owned but approximately 50 sheep at the time of his marriage to Appellee in July, 1926. The court found, with ample evidence in support, that the additional sheep, a flock of some 500, were purchased in 1928, some 2 years after the marriage, and were subsequently paid for by funds borrowed on the credit of the community, most of such payment having been made by the widow after Albert's death.

There is ample evidence to support the court's finding that the 875 head of sheep possessed by Albert Stroope at the time of his death and which came into the hands of Appellee as administratrix of such estate and as guardian of the two minor children were the property of the community. Notwithstanding the fact that at the time of his marriage Albert Stroope may have owned 50 sheep, the intermingling over the years of this small number with the large herd subsequently purchased, augmented and owned by him would, under the circumstances disclosed by the record here, make of all such sheep the property of the community. There is a presumption, not overcome by any proof offered here, that these sheep, being acquired during coverture, excepting as to the 50 head which have become so commingled over the years as not to be "clearly traced or identified," are community property. Brown v. Lockhart, 12 N.M. 10, 71 P. 1086. And the debt created by the purchase is the debt of the community. Id. See Roberts v. Roberts, 35 N.M. 593, 4 P.2d 920; In re Faulkner's Estate, 35 N.M. 125, 290 P. 801; McKay on Community Property, 2d Ed., pages 215, 230; 11 Am.Jur., p. 198.

And, the fact that some of these sheep may have borne the earmarks of the minor daughter did not, under the circumstances of this case, alter the situation. The evidence is sufficiently substantial to support the trial court's holding that the sheep were always treated as, and were in fact, the property of the community.

We find no merit to the contention that the trial court erred in refusing to bring the accounting sought, and had as ending on the date of March 23, 1942, down to a later date and when there may have been other and additional proceedings—to the time the court made its findings of fact and conclusions of law. The suit was not for a final accounting; the ward had not yet attained her majority and no succeeding guardian had been appointed or qualified, and, as we are advised, none was contemplated. Theoretically, and actually, there could be a balancing of the account with every passing day. The relationship of guardian and ward was a continuing one and it is unimportant that the account upon which the court rested its decision and judgment was not brought down to the exact day of the close of the case.

There is likewise no merit to Appellant's other contention raised under Point IV. Under the circumstances of the

case we would decline to hold that the trial court erred in its refusal to appoint a receiver for Velma's portion of the sheep or to require of Appellee additional security for the protection of the ward. The evidence shows that upon the death of Albert Stroope, in May, 1932, he owned 875 head of ewes; that there were, at times perhaps, 1000 sheep in the herd, and sometimes as few as 500 or 600. On September 3, 1941 it appeared that there were "about 900 head." It appears, by the petition for the sale of Velma's interest in the land filed November 5, 1941 (Cause No. 4771), that there was perhaps only some 500 sheep, but the tax rolls for the years 1938 to 1941, inclusive, show approximately 900 sheep in the herd and assessed to Appellee. The lower court found that the herd consisted of no less than 700 at the time of the hearing, and Appellant does not point out evidence in the record to show this finding to be unsupported. In any event, even with many less than 700 sheep still in the herd, there was an ample number to protect the three-eighths interest of Appellant in the sheep.

Appellee had a larger interest in this herd than Appellant; and the evidence disclosed by the record does not indicate that the step-mother, notwithstanding her remarriage in 1938 (to John W. Potter), was not yet employing her best efforts in maintaining the value of the community estate in the interest of both herself and the minor. If Appellant were sincerely apprehensive as to the proper preservation of her interest in the herd, she could have applied for and had a succeeding guardian appointed and qualified to take over her interest. But she doubtless considered that in the interest of efficiency and economy of operation the herd should be kept together, and that the step-mother should continue to manage the property. Certainly the record of Mrs. Potter's performance in this connection would support such a view.

There is no merit to any assignment argued under this point.

Taking up now the question of the accounting offered by Appellee and accepted by the court, it will be well to notice just what was done and the necessity therefor. We would not encumber the record with reference to the many individual debits and credits. There are 102 such items offered and set up in the recapitulation by the court. Seventeen typewritten pages were employed in the court's findings—and discussion—of these items alone. There is no substantial controversy as to the total receipts which came into the hands of the Appellee. It is agreed that these are properly accounted for. The objection goes to Appellee's manner and method of keeping accounts, or of her total failure to keep accounts, of expenditures. Based upon the evidence in the case, the trial court accepted, made up and allowed an account showing receipts and expenditures for the time Appellee was administering the estate of her deceased husband and while she was guardian of Appellant Velma, and her sister. This covered the whole period involv-

ing any interest of Appellant in the ranch operation.

The period over which the account runs is from July 1, 1932 to March 24, 1942, the date of the hearing below. This is divided into five specific divisions of time for the convenience of the court in appraising the account. These divisions need not be noticed here.

Perhaps the most substantial objection arises over the court's allowance as a credit to Appellee of an average monthly sum for living expenses of Appellant Velma during this ten year period. Appellee undertook to keep no exact amount of such expenses; but was able to show by oral testimony, by reference to her check stubs and other memoranda and records made over the years, approximately the amount expended on this account. There was set up as a fair estimate, and allowed by the court, the average sum of $33.33 per month over the whole period for the support of each of the minor children. This was doubtless based upon the ample evidence to be found in the record going to the standard of living maintained in the home and the expenses incurred in giving the minors the many advantages they enjoyed.

We are not prepared to say that the evidence does not support the finding of reasonableness of the credits allowed. In fact it may be observed that the income from the ranch, allowing Appellant only that portion to which she would be legally entitled (3/16 thereof) would have afforded her much less than an average of $33.33 per month for her living and educational expenses. Appellee must have drawn largely upon her own account in providing some of these expenses.

Objection is urged also particularly against the allowance of Item No. 14 of the account, which is for $653.14. The amounts so allegedly spent and for which credit is asked, the court found, were spent as for general ranch expenses only and for the additional personal needs of the mother and the two daughters, all of whom were devoting their joint labors to the ranch enterprises. The trial court found that this item is supported, for all practical purposes, by the testimony and by ledger pages, etc. The court took notice that there were continuing costs covering the ranch operation and the living needs over a certain period of time which it would be difficult to definitely estimate. There was ample evidence going to the question of the average costs of running sheep under circumstances here attending and we are not prepared to say that the allowance made by the court in permitting these particular credits were erroneous, or excessive.

Likewise we cannot say that the trial court erroneously allowed credit for the items claimed to have been expended in the repair, remodeling and construction of the ranch property. The allowance is challenged by Appellant as not justified by the evidence. The Appellant has not discharged the burden of showing that there is no substantial evidence which reasonably sustains this or other findings of fact going

to the allowance of these items as proper expenditures.

■ Accountings of this nature are governed by "broad principles of equity", and it is at all times proper for the accounting party, "unimpeded by technical rules," to show the fairness of his dealings, the real nature of the transaction, and to restrict the amount for which he should be held liable to that which equity demands. In re Callaghan's Estate, 265 Mich. 288, 251 N. W. 316.

We deem it unnecessary to further notice separately the specific items charged and credited to the account by Appellee. The record is too voluminous for this undertaking. Certainly Appellee did not keep a full and correct account of receipts and expenditures. Indeed it may be said that she actually kept no definite and accurate account as to most expenditures for which she asks and is given credit in her accounting herein. But, as the court in its finding observed, she intended to take, and did take, no advantage of her wards; but that she acted towards them as a good mother, having regard for their financial interests; that she gave them excellent care in upbringing; that it was the part of wisdom that she should keep in operation the sheep business, from the profits of which she would be enabled to provide all this; that any erroneous expenditures or inaccurate methods of keeping records are to be chargeable only to ignorance on the part of the Appellant, and under no circumstances was such to be charged to her as

bad faith or lack of interest in the welfare of her charges or in the preservation of their estate.

The court found that during the period of time involved Appellee received from the ranch operation, from sheep sales alone, $36,701.73—not a bad showing for an unlettered widow left with an estate of livestock valued at the time at $2187.50, gross, and with debts of $2894.83, substantially in excess of the value of the estate itself.

■ "The failure to present vouchers does not, in the absence of statute so providing, necessarily work a forfeiture or bar the allowance of expenditures properly and actually made." Vouchers may be dispensed with in a clear case, "where there is no doubt of the expenditures having been made or of the guardian's good faith." 39 C.J.S., Guardian and Ward, p. 252, § 150; In re Wilber, 151 Wash. 525, 276 P. 876. We have no statute requiring vouchers as a prerequisite to securing such credits.

■ Credits for support and maintenance of the ward, upon the rendition of account are allowable, even though such expenses be incurred without the previous authorization by the court. Bliss v. Spencer, 125 Va. 36, 99 S.E. 593, 5 A.L.R. 619; Kelly v. Kelly, 89 Mont. 229, 297 P. 470; 25 Am.Jur. 46, sec. 71.

We are not unmindful of the duty imposed upon the guardian to render as true and full accounting as is possible (25 Am. Jur. 99, sec. 159), and yet neither the statutes of New Mexico nor the general rule,

absent such statutory requirement, requires that the guardian, or an administrator, must show vouchers or receipts for each item of expenditure.

The matter of honesty in rendition of account, of good faith in the discharge of the duty as it applies both to an administrator and a guardian, and the question whether the expenditures were entitled to be made and were in fact made are paramount in the consideration and allowance of credits. The guardian is entitled to be credited with all reasonable expenses incurred in the maintenance and education of the ward. 12 R.C.L. 157, sec. 49.

Suspicion of fraud or bad faith, absent here, would doubtless call for a more full, complete and accurate account. Racouillat v. Requena, 36 Cal. 651; 39 C.J.S., Guardian and Ward, p. 250, § 148.

Appellee is in a court of equity, and the finding that she in good faith kept and presented the best account reasonably to be expected of one wholly unequipped for exact bookkeeping, will not be disturbed. It is to be admitted that this account is rather awkwardly and unsatisfactorily made up, and yet it is done to the best of her ability according to the trial court's findings, which we decline to disturb.

Appellee is not to be excused from keeping a full and complete account simply because it would involve additional effort or labor. She may be excused, under the circumstances of this case, however, when it is considered that she was an unlettered ranch woman, acting largely without advice, struggling over the years to bring to fruition her ambition that some day the small ranch and livestock left for her and her charges would be worth more than the indebtedness against them (which was not the case when she took over), and that her stepchildren, for whom she had always shown the deepest affection and interest would have, by provident management, at least a home, and the necessities of life. They actually received more than this. They enjoyed a good home and many luxuries, as measured by the standard of ordinary ranch life, and good educational advantages, including a college education.

The trial court, in its effort to do equity and to secure from her and have set up as complete and accurate an accounting as was possible under the circumstances, patiently indulged for some three days, the presentation of voluminous evidence in support of, and against, the account Appellee presented. We are not prepared to say that the evidence does not support the trial court's findings that a substantially correct account was thus shown and equity substantially done as between the parties to the suit. All doubtful credits claimed by Appellee have been ably and skillfully challenged by the ward's counsel. But Appellee's conduct throughout the entire period of time involved so compels support to a finding of honesty and good faith as to resolve the many important omissions in record keeping in her favor nevertheless.

The cause is remanded with instruction to reinstate upon the docket, to set aside the judgment heretofore rendered and to re-enter the judgment with the modification that Appellant is entitled to an undivided three-sixteenths interest in the 160 acres of the Ab Stroope land and forest permit appurtenant thereto. Costs on appeal to be taxed upon the basis of one-half to each party thereto.

And, it is so ordered.

SADLER, C. J., and BRICE and THREET, JJ., concur.

BICKLEY, Justice (concurring in part and dissenting in part).

In view of the presumptions that attend the correctness of the judgment of the trial court, and in view of the fact that Ab Stroope consented to the alteration of the deed in the particular mentioned, and that his wife had theretofore joined in the deed and left it with her husband as manager of the community property to be delivered, I think there is a justifiable implication of authority in the husband as such community property manager to make the alteration, particularly since there is no suggestion that the alteration is or could be prejudicial to or in fraud of the wife.

The judgment should either be affirmed or the cause remanded for a finding by the trial court of the specific facts as to consent by Mrs. Ab Stroope to the alteration effected by her husband, after further proof, if necessary.