[No. 35604.   Department One.   March 30, 1961.]

DONALD J. DISQUE, *as Guardian of Bessie M. McCann, Appellant,* v. ROBERT A. McCANN *et al., Respondents and Cross-appellants,* HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Respondent.**

*Reported in 360 P. (2d) 583.

*Boardman Noland*, for appellant.

*Erickson & Freeman* by *Harvey Erickson*, for respondents and cross-appellants.

HILL, J.—This is an action by a guardian of an incompetent person to recover from a former guardian, and the surety on his bond, the sum of $7,012.33.

The trial court found that $4,022.77 of this amount had been expended by the deposed guardian on behalf of his ward and gave him credit for that amount; held him liable

for $2,989.56, of which the surety company paid $1,000 (the amount of the deposed guardian's bond); and a judgment for $1,989.56 was entered against the former guardian and his marital community.

The plaintiff appeals, contending that there was no evidence that the $4,022.77 had been expended on behalf of the ward, and that the judgment should be for the $7,012.33, less the $1,000.00 paid by the surety company.

The former guardian and his wife cross-appeal from the judgment against the marital community, contending that it is his separate obligation.

The ward is the stepmother of the former guardian, and by her will she named him her sole beneficiary except for a minor bequest. (This will, by reason of her incompetence, she is now unable to change.) He treated the guardianship as a purely personal or family matter, handling the cash as his own and making no pretense of keeping any record of receipts or disbursements during the fifteen months (and a few days more) he served as guardian.

It is conceded that the former guardian did not turn over to the present guardian $7,012.33 of the amount he had received and that neither at any time during his guardianship, nor at any time since his removal, has he complied with RCW 11.92.040 requiring a guardian:

"(3) To render on oath to the proper court an account of his receipts and of his expenditures, with vouchers therefor, . . ."

The duty of a guardian to account, while specifically required by statute, has always been required by the courts independently of statute. *In re Guardianship of Hill's Heirs* (1894), 8 Wash. 330, 35 Pac. 1071; *In re Carlson* (1931), 162 Wash. 20, 297 Pac. 764. In the latter case, at page 28, we said, concerning the responsibilities of a guardian,

". . . the courts require a more jealous guarding of the interests of such helpless persons than those of other beneficiaries of trusts."

The former guardian urges that he, obviously, spent some money for the care of his ward during the fifteen

months of his guardianship and, although he can present no receipts or vouchers, he should be permitted to show amounts actually expended. We have said, *In re Wilber* (1929), 151 Wash. 525, 276 Pac. 876, where it was contended that credits should not be allowed to the guardian because he presented no vouchers covering disbursements as required by the statute (p. 527),

" . . . Our statutes do require vouchers to be presented, but it is nowhere provided that a failure to present vouchers shall work a forfeiture or bar the allowance of expenditures properly and actually made. The general rule seems to be:

" 'Proper vouchers are ordinarily required to be furnished with each item of expenditure, although they may be dispensed with in a clear case, where there is no doubt of the expenditures having been made, nor of the guardian's good faith.' 28 C. J. 1213, § 371.

"We think, especially is cases like this, where the personal representative or guardian is of humble attainments educationally and without business training, that lack of system should not be permitted to work actual injustice."

The defendant certainly is not a man "of humble attainments educationally and without business training." To the contrary, he is a person of extensive business experience and has held, and continues to hold, important positions requiring executive and administrative ability.

If we are to extend to guardians of the education, competence, and standing of the defendant the benefit of the rule that "lack of system should not be permitted to work actual injustice," there must be some credible corroboration of his testimony that the expenditures claimed to have been made for the ward were, in fact, made.

■■ The former guardian takes the position that because he testified he had spent the amounts itemized in exhibit No. 6, totalling $4,691.65, on behalf of his ward, that he has accounted for that amount; and that because the present guardian, the plaintiff in this action, can not say that any of the items are fictitious, fraudulent, or erroneous, the former guardian must be credited with that amount.

While we thought that, under the testimony, the plaintiff did a pretty fair job of demonstrating that the item of a hundred dollars a month for nine months for groceries was clearly on the fictitious side, it was not the responsibility of the plaintiff to prove that the former guardian did not spend, for and on behalf of his ward, the amount for which credit is claimed. It was, rather, the former guardian's burden to prove that he did make such expenditures.

The present guardian is entitled to a judgment against the careless-improvident-nonrecord-keeping former guardian (and these are the most charitable adjectives that could be used) for $7,012.33, less such of the items totalling $4,691.65 as the former guardian can establish by credible corroborating evidence was actually expended for the ward's benefit.

On the present state of the record, there being no corroboration of any of these items, a judgment for $7,012.33, less the $1,000 paid by the bonding company, is the only judgment that could be entered.

However, the former guardian did make certain expenditures for the ward, and he should have credit for those amounts if he will produce the corroborating evidence which should be readily available. Thus, if he spent, as claimed, $751 for roof repair and painting on his ward's home, he should be able to establish that this was a necessary and proper expenditure for that purpose and produce the person to whom payment was made. If he paid a housekeeper $130 a month for nine months, she should so testify; and if he left $40 a month for twelve months with a housekeeper for petty cash, she should so testify. If he spent $231.67 for fuel, the party that furnished the fuel should so testify. It he paid taxes on the ward's real estate in the sum of $135, it certainly is susceptible of proof.

We do not ordinarily give a litigant two opportunities to prove his case, but we are remanding this case to give the former guardian another chance to prove what expenditures he actually made for his ward, because the trial court may have misled him as to the character of

proof required to substantiate his claimed expenditures when it indicated that an itemized statement, such as exhibit No. 4 showing expenditures of $4,742.14, or exhibit No. 6 showing expenditures of $4,691.65, would be accepted as proof of expenditures in those amounts if the former guardian testified that he had actually made them. While he did so testify, such type of proof would make a mockery of a guardian's accounting for his expenditures. If the statutory requirements are not met, any concession to a "lack of system" must involve credible corroborative evidence of the expenditures claimed.

Another reason for a remand is that, insofar as the present judgment is concerned, we are left with no basis by which to determine how the trial court arrived at its finding that the former guardian had expended $4,022.77 for the maintenance of his ward and that $2,989.56 was the amount for which judgment should be entered.

The testimony, based on exhibit No. 6, was that he had expended $4,691.65 for the maintenance of the ward; which of the items the trial court approved or disapproved is nowhere indicated. However, an item of $189.99 was for money that had been expended prior to the guardianship and for which no claim was ever filed in the guardianship. The very authority on which the former guardian relies so heavily (*In re Wilber, supra,*) indicates that no credit for such an expenditure can be taken in a guardianship accounting, and this would reduce the expenditures for the ward to $4,501.66.

The nearest that we can come to a justification of the figure of $4,022.77 is that the trial court added the $189.99, the item referred to above, to the figure of $2,800 (the f o r m e r guardian having confessed judgment in that amount), which would be $2,989.99, and subtracted it from the $7,012.33; this would give $4,022.34. (With a variation of forty-three cents in each instance we thus arrive at the trial court's figures.)

Whatever be the method used in arriving at the figures of $4,022.77 for expenditures made for the ward and $2,989.56 for the judgment against the former guardian

and his surety, there is no justification for it in the evidence. This is not an action for damages where the court may find any amount within the range of the testimony, but is an action for $7,012.33 of a ward's money which the former guardian has failed to deliver to the present guardian. The only deductions permissible are expenditures actually made on behalf of the ward. It is the duty of the trial court in such a case to include in its findings the specific amounts it finds to have been so expended so that they can be challenged on an appeal.

■ The trial court further erred in charging the one-hundred-fifty-dollar accountant's fee to the guardianship estate; it should be charged against the former guardian whose derelictions, and failure to account, have made this whole proceeding necessary.

■ The former guardian's cross-appeal is entirely without merit. Conceding that the former guardian's wife never personally nor knowingly received any of the ward's money and that the former guardian carried his ward's money ($7,012.33) around in his "pocket," as suggested by counsel, it does not prove that the former guardian (the manager of the community) did not commingle the ward's money with community funds in the capacious "pocket," or that the community did not receive the benefit of it.

The former guardian's testimony was as follows:

"Q. You commingled the money? A. Yes, we commingled the money. There is no question about that. Q. So you did commingle her funds with your money? A. That is right."

The commingling must have been with community funds, because there is no suggestion that the former guardian had any separate funds.

He testified that he handled his ward's money through a checking account, and yet the cancelled checks he produced in an attempt at an accounting, were—the guardian who examined them testified—not traceable to expenditures made for the ward, but were largely checks drawn to cash or to the former guardian personally. If not spent for the ward, the money must presumptively have been spent by the former guardian for community purposes. No attempt

has been made to defeat that presumption, except the wife's testimony that she did not personally receive any of it (at least not knowingly). No contention is made that she is separately liable.

We think the evidence clearly supports the trial court's finding that the portion of the $7,012.33 not accounted for became commingled with

". . . community funds and lost its identity and the community obtained benefits from this money to such an extent that the amount owing becomes a community debt. . . ."

As was said in *McGregor v. Johnson* (1910), 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022, there could be no question but that the money wrongfully obtained and retained by the husband would become the community property of himself and wife.

". . . Under our statute it certainly would not become his separate property. If we were to hold that the obligation he has wrongfully incurred to the respondent is now his separate debt, it would follow that the community, after receiving a financial benefit from his wrongful acts, could retain the same without being called to account or compelled to make restitution. Such a holding could find no support in either law or reason. . . ."

We have indicated that the judgment should be for $7,012.33 (less the $1,000 paid by the bonding company), less such amounts as the former guardian may establish by credible corroborative evidence to have been paid for the support and maintenance of his ward or for her benefit.

Reversed and remanded on guardian's appeal; affirmed on former guardian's cross-appeal. All costs on this appeal and on the remand to be charged against the former guardian.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.

---

May 22, 1961. Petition for rehearing denied.