**In the Matter of the Guardianship of Lyle E. Salisbury, an Incompetent.**

**Lyle E. SALISBURY, Appellant
(Plaintiff below),**

**v.**

**HANOVER INSURANCE COMPANY,
Appellee (Defendant below).**

**No. 3627.**

Supreme Court of Wyoming.

July 9, 1968.

Walter C. Urbigkit, Jr., of McClintock, Mai & Urbigkit, Cheyenne, for appellant.

Edward T. Lazear, of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Lyle E. Salisbury was adjudged incompetent and committed to the Wyoming State Hospital. His wife, Olive Salisbury, was appointed guardian of his estate. The surety on the guardian's bond was Hanover Insurance Company. Following Salisbury's release, he brought suit against the bonding company for funds alleged to have been appropriated from his estate by his guardian. Olive Salisbury was not a party to this suit.

After suit was brought against the bonding company, an inventory and appraisement was filed by Olive Salisbury. She also filed a first and final report of guardian. Salisbury filed objections to the guardian's report. The hearing on Salisbury's objections in the estate proceedings was consolidated with his suit against Hanover Insurance Company for trial.

A trial of both matters was had to the district court of Laramie County without a jury. The court gave judgment for defendant, the bonding company, in the suit against it. A judgment was also entered in the estate proceedings, with findings against Salisbury's objections. In this judgment, the final report of the guardian was approved and the guardian and her bondsman were discharged. Salisbury has appealed from both judgments.

Just prior to the adjudication of Salisbury as an incompetent, he and his wife had sold their home. A check for $5,071.14 representing the net proceeds of this sale was issued. It was made payable to both Lyle Salisbury and Olive Salisbury. After Salisbury had been committed to the State Hospital, his wife was appointed guardian of his estate in order that she could endorse this check for Lyle Salisbury, as his guardian.

After the appointment of guardian had served its immediate purpose and Olive Salisbury had collected the full amount of the check received from the sale of the Salisbury home, nothing more was done in the estate matter for approximately six years. In the meantime Salisbury had been released from the State Hospital and declared competent; he and his wife had been divorced; and the suit against the bonding company had been commenced.

Without attempting to fix the relative responsibility for such gross neglect in the handling of the estate matter, as between the guardian, the attorney for the estate, and the bonding company, we do point out the following statutory provisions which appear to have been ignored:

Section 3-9, W.S.1957, requires that a condition of the bond shall be that the guardian will faithfully execute the duties of his trust according to law. Duties expressed in this section include the making of an inventory of all the estate; the duty to dispose of and manage the estate according to law for the best interest of the ward; and the duty to render an account within three months and at such other times as the court directs.

Section 3-28, W.S.1957, requires every guardian to return an inventory of the ward's estate within three months after appointment and to annually thereafter account therefor. All the estate described in the first inventory is required to be appraised by duly appointed appraisers.

Section 3-29, W.S.1957, requires the guardian, upon the expiration of one year from his appointment, and as often thereafter as required, to present his account to the court for settlement and allowance.

The petition for appointment of guardian showed the incompetent's estate consisted of two things: (1) an equity from the sale of the Salisbury home ($5,200); and (2) an equity in a 1957 Buick ($3,150). Undisputed evidence adduced at the trial showed the net proceeds from the sale of the home were $5,071.14. Although the home was apparently joint property and not held by the Salisburys as tenants in common, all parties have assumed the husband's equity was one half, or $2,535.57.

Concerning the 1957 Buick, undisputed evidence at the trial showed its original cost was $3,150. However, at the time of Salisbury's commitment it was subject to a mortgage of $1,922.17. Apparently this car was used as a family car for some time and then traded in by the wife on another car. The appraisers appraised it as having had a value of $1,700 at the time of Salisbury's commitment, with a mortgage of $1,922.17, which left the car with no appraised value to the estate. The guardian ultimately gave a credit of $577.83 on this 1957 Buick.

The inventory and appraisement, which was eventually filed by the guardian after suit against the bonding company had been started, listed and appraised only the two properties mentioned in the petition for appointment of guardian. We have had difficulty in understanding what additional property belonged to the ward's estate. Much of it appears to have been joint property owned by the Salisburys as husband and wife—property which apparently was used by the wife for care and maintenance of the family. Much of the property disputed about had to do with a restaurant which appellant claims was owned in partnership.

We find no orders or judicial decrees, prior to the judgments appealed from, which settled property rights between the husband and wife, or which settled their partnership affairs. In particular, it is noted that Olive Salisbury sued for divorce and this suit was pending when Salisbury was adjudged competent and restored to his civil rights. He then filed a counterclaim for divorce, and a decree of divorce was granted in his favor.

Section 20-63, W.S.1957, provides that in granting a divorce, the court shall make such disposition of the property of the parties as shall appear just and equitable. Our problem is complicated by the fact that this was not done when Salisbury's divorce was granted. The property of the guardianship estate included whatever assets Salisbury owned as a spouse. Also, both Lyle Salisbury and Olive Salisbury have considered the restaurant business was a partnership business owned by them as partners. If that be so, then property of the guardianship estate included whatever assets Salisbury owned as a partner.

Pursuant to Rule 52(a), W.R.C.P., and upon the written request of counsel made prior to trial, the trial judge made findings of fact in both of the cases we are concerned with. According to these findings, the court found the guardian received $33,-236. It designated $14,916 of that amount

as separate property of Olive and $18,320 as Lyle Salisbury's property.

There is no showing as to how the court arrived at the figure of $33,236 as the amount the guardian received, except it is indicated the figure is "from Salisbury's own figures." Inasmuch as the guardian had the burden of proof to show that her accounting was correct (see Disque v. McCann, 58 Wash.2d 65, 360 P. 2d 583, 586), we think the findings of fact should show what items of receipts the guardian was chargeable with. We also think the findings of fact should show how and why the respective shares of $14,916 and $18,320 between Olive and Lyle were arrived at.

The findings of the trial court list a total of $11,461.41 of obligations and payments which were paid out by the guardian. Here again, the findings of fact need to be more specific and definite. For example, it is shown that the guardian has been given a credit of $4,160 for "auto payments and transactions and exchanges and purchases of motor vehicles." We have no way of knowing how the court arrived at this credit.

Additionally, there is included in the $11,461.41 of credits $971.31 for payment of a note to the Stockgrowers Bank, and $6,000 for payment of an obligation to Cheyenne Federal Savings & Loan. If these were obligations of the restaurant partnership business, as we understand them to be, then we are left wondering why half of the $6,971.31 was not charged to Olive and half to Lyle.

Of the balance of cash received by Olive (the difference between Lyle's property valued at $18,320 and the expenditures listed at $11,461.41), the trial court found it was commingled and was used when and as received during the 32 months of guardianship for the support and maintenance of the wife and five sons of Lyle Salisbury; for his own support to some extent as required; and for the restaurant business.

It is obvious the trial court made no effort to reconcile its findings with the evi-

dence pertaining to what had been spent by the guardian for support and maintenance of the wife and five sons; for support of the ward; and for the restaurant business. Subsidiary issues were raised at the trial in connection with the guardian's accounting, with respect to expenditures for support and maintenance and the restaurant business. Without basic findings of fact on these issues, we have no way to tell whether the trial court was justified in its conclusion that all of the balance of cash received by Olive had been commingled and used for the purposes stated.

As authority for our holding that more definite and specific findings of fact are needed in the areas we have mentioned, we call attention to the discussion of this matter in Featherstone v. Barash, 10 Cir., 345 F.2d 246; and in Woods Construction Company v. Pool Construction Company, 10 Cir., 314 F.2d 405, 406, 407. See also 2B Barron and Holtzoff, Federal Practice and Procedure, § 1127, p. 503 (1961).

Appellant claims there were constitutional and statutory insufficiencies in the commitment process, when Salisbury was adjudged incompetent. He also claims he was denied the right to introduce, for impeachment purposes, certain evidence having to do with the moral character of Olive Salisbury. In view of our holding that more definite findings are needed, it is not necessary for us to discuss these matters at this time.

Remanded for further proceedings consistent with this opinion, which may include a further delineation of issues and the taking of additional evidence.

HARNSBERGER, Chief Justice (dissenting).

The only question legitimately presented to this court upon the appeal is whether the court erred in accepting and approving the belated accounting of the guardian. No question of divorce, property settlement incident thereto, or any other extraneous matter is before the court.

While evidence justifying the guardian's handling and use of monies and assets belonging to the estate of the ward is somewhat meager, it cannot be said that, taken as a whole, it is unsubstantial. The court might properly have taken into consideration reasonable allowances for services of the guardian in prosecuting and conducting the restaurant business and reasonable and proper amounts for maintenance, care, and support of the minor children of the parties prior to the divorce, whether or not specific claims for these amounts had been advanced in the accounting.

Under these circumstances it is a miscarriage of justice to accuse the trial judge of having abused his discretion in concluding that there had been a sufficient and lawful accounting made of the monies, property, and assets of the ward coming into the hands of the guardian.

The judgment of the lower court should be affirmed, so I must dissent.