[No. 39291. Department Two. June 5, 1969.]

*In the Matter of the Guardianship of* LAURA LINDA RUDONICK, *a Minor.*

LAURA LINDA RUDONICK WILCOX, *Appellant,* v. VITA P. MATHEWS *et al., Respondents.*\*

*Reported in 456 P.2d 96.

*Nickell, Quinn & Tuai,* by *Liem E. Tuai,* for appellant.

*Merges, Brain & Hilyer,* by *G. Robert Brain* and *Karr, Tuttle, Campbell, Koch & Campbell,* by *Coleman P. Hall,* for respondents.

NEILL, J.—This litigation arises, almost foreseeably, in a guardianship estate wherein there is an untrained and inexperienced parent-guardian dealing with her ward's funds without regard to her fiduciary responsibility; incomplete,

irregular and inaccurate accountings; and family discord. In fact, just about everything that could be done wrong in a guardianship is in this record with one notable exception —there is no evidence of willful misappropriation of the ward's funds.

The ward, Laura Linda Rudonick Wilcox, filed a petition against her mother and guardian, Vita P. Mathews, for an accounting and for recovery of guardianship funds allegedly misapplied or unaccounted for by the guardian.

The ward's father, Mr. Rudonick, was a fireman with the San Francisco Fire Department. The pension system of the department includes survivor benefits for the support of widows and dependents. Mr. Rudonick died in June, 1947, but his wife was not eligible for the widow's pension, not having been married to Mr. Rudonick for the 2 years necessary to qualify. However, their daughter, Laura Linda Rudonick, was eligible for dependent's benefits.

Mrs. Rudonick was duly appointed guardian of the person and of the estate of Laura Linda by the superior court in San Francisco County, California. The guardianship was later transferred to San Diego County, California. Payments of the pension benefits for the ward commenced in 1948 and terminated on her 16th birthday in November, 1962. These payments were the sole source of funds in the guardianship estate.

Mrs. Rudonick remarried and had four children by her second husband. They were divorced and, in 1956, she married Mr. L. A. Mathews. In 1957, the family moved to Seattle, where Mrs. Mathews petitioned the King County Superior Court for appointment as guardian. She was appointed on October 11, 1957. Upon her qualification as guardian in Washington, she caused an order to be entered in the California court transferring the guardianship assets to Washington.

The ward married a man of full age on March 17, 1965, without her mother's consent, and since that date has lived away from the family home.

The California court had authorized the guardian to withdraw $125 per month for the ward's support. In Nov-

ember, 1957, without court authorization, the guardian began withdrawing $250 per month for support of the ward.

No inventory has been filed in compliance with RCW 11.92.040(1) nor has the guardian complied with the accounting requirements of the statute. She did file three reports between the time of her appointment in 1957 and the filing of the present action. A report filed July 15, 1960, listing $9,380.57 in expenses, including $7,750 for the ward's support, was approved by the court ex parte. That order authorized the guardian to continue spending $250 per month for the ward's support. On May 13, 1963, the court approved ex parte a second report listing expenses of $6,973.80, including $6,000 for the ward's support. That order authorized continued withdrawals for support of $250 per month for a 12-month period. On May 25, 1965, a third report was approved ex parte showing $9,276.91 expenses, including $7,000 for the ward's support for 28 months. The ward was not represented by a guardian ad litem at the hearings on any of these reports.

The pension payments to the guardian totaled $62,559.77, of which $27,991.10 was received during the Washington guardianship. Due largely to sales of securities purchased with guardianship funds in California, the actual cash received by the guardian during the Washington guardianship totaled $37,639.21.

Following the trial on the issues raised by the ward's petition, the court found that the guardian had indiscriminately used guardianship funds and that she kept few records of expenditures from the guardianship estate. No record at all was kept of how the support allowance was spent and it was apparently commingled with the general household funds. Only two receipts for expenditures were submitted at the trial, but corroborating evidence of expenditures for attorneys fees was introduced. The parties stipulated that $942 in surety bond premiums had been paid.

The court limited the hearing to transactions and activities which occurred during the Washington guardianship. The expenses and disbursements as stated in the guardian's

reports, excluding $3,207 for the purchase of a cabin and related expenses, and excluding $2,000 of a $2,500 expenditure for the purchase of a Volkswagen bus, were approved by the court and the guardian given credit therefor. Judgment was entered against the guardian and her sureties for $8,075.73. The ward appeals.

Error is assigned to (1) the trial court's limitation of the hearing to matters occurring during the Washington guardianship; (2) the approval of the $250 monthly support allowance; (3) the approval of various other expenditures totaling $3,620.48; (4) the approval of a $453.80 expense incurred during a special proceeding in March, 1962; (5) the failure of the court to include in its judgment an accountant's fee incurred by the ward in this action; and (6) the failure of the court to include interest in the judgment.

First, with respect to the California guardianship, there is nothing which prevents a Washington court from reviewing the guardian's management of the estate while in California, provided that these matters have not been the subject of a final adjudication in California. We have previously held that the superior courts, under their general equity powers, have jurisdiction to require a guardian to account for funds coming into her possession prior to her appointment as guardian. *Woeppel v. Simanton,* 53 Wn. 2d 21, 330 P.2d 321 (1958); *In re Williamson,* 75 Wash. 353, 134 P. 1066 (1913). The fact that the funds came into the guardian's possession while she was under the jurisdiction of the California court is immaterial as long as our courts now have jurisdiction to require an accounting. *See Ong v. Whipple,* 3 Wash. Terr. 233, 3 P. 898 (1882). As there has never been a final, binding settlement of the guardian's accounts and actions during the California administration, and Washington courts have jurisdiction over the parties and the subject matter, it would be a meaningless and unnecessary burden to require the parties to return to California for final settlement of those activities of the guardian.

Whether the present sureties may be held for any misap-

propriation which occurred in California is not before us. We only note in passing that in a proper case a surety may be held for misappropriations occurring before execution of the bond. *See Owens v. McMahan,* 122 Wash. 191, 210 P. 200 (1922); *In re Kelley,* 193 Wash. 109, 74 P.2d 904 (1938). The trial court has jurisdiction to rule upon whether the guardian's bond in this case covers the activities of the California guardianship.

The guardian, however, claims that the pleadings are not sufficient to raise the question of the expenditures which occurred during the California guardianship because they give no notice to either the guardian or the sureties of any claim based upon the California proceedings. We first point out that issues are no longer framed exclusively by the pleadings. We note that paragraph 5 of the petition by which the ward initiated these proceedings reads as follows:

> Petitioner is entitled to and demands *a complete and final accounting of the guardianship estate,* a distribution of said estate and to have a judgment entered on her behalf against the said guardian and her sureties as hereinbefore named in an amount shown to have been by the said guardian misapplied, wrongfully spent and/or unaccounted for and interest thereon, as well as a termination of the subject guardianship.

(Italics ours.) The prayer of the petitioner is manifestly broad enough to include the California proceedings.

Furthermore, this same question was raised at a pretrial hearing 5 months before trial. The pretrial order specified that its purpose was "to establish the scope of the issue at trial" and that "the parties shall be controlled by this order in determining the extent of the accounting in the preparation and trial of this matter." With respect to the California proceedings, that order states:

> 5. If, at the trial of this matter, neither party has pleaded any allegations as to the California law or the effect of that California order under the California law, then the Washington law shall apply and that California order shall be treated at the trial as an ex parte order and the matters covered thereby may be modified and

reviewed upon the final settlement of the account with the ward.

The above language certainly gave notice to the guardian and her sureties that the California proceedings were going to be subject to the same review as the Washington proceedings.

Neither party has pleaded California law and it is assumed it is the same as Washington law, which is, as we next discuss, that ex parte orders are not final.

The guardian contends that the ex parte interim orders approving her expenditures are res judicata, and if not res judicata at least prima facie correct. RCW 11.92.050 provides a statutory method by which a guardian's intermediate accounts may receive judicial approval in the form of a final order. That statute provides for a hearing on the guardian's actions and accountings at which a guardian ad litem is appointed to represent the ward. The result of such a hearing is a final order which is res judicata.

 The guardian contends that RCW 11.92.050 permits a final order to be entered without the appointment of a guardian ad litem. We do not agree.

The statute provides that "in the event such a hearing be ordered, the court shall also appoint a guardian ad litem," and at "such hearing" the court may enter an order, and "such order" shall be final. Ex parte orders entered during the pendency of guardianship proceedings are not res judicata, but may be modified when the interests of justice demand. *E.g., see Grady v. Dashiell,* 24 Wn.2d 272, 163 P.2d 922 (1945). If the legislature had intended to change the rule and allow final orders to be entered ex parte, it would have used more specific language. Further, even had the legislature expressly provided for final orders without representation of the ward, an obvious constitutional issue would be presented. Rather, by enacting RCW 11.92.050, the legislature has offered the guardian some relief from the problem of justifying expenditures years after the fact, but has only done so after the interests of the ward have been protected by the appointment of a guardian ad litem. Under these circumstances, we cannot say that a guardian

ad litem is required only as a matter of form. Such representation is an essential prerequisite to the finality of the resulting order. Therefore, we hold that. in the event a court decides. to hold the hearing provided for by RCW 11.92.050, it must appoint a guardian ad litem before orders resulting from "such hearing" will be final. The orders approving the guardian's interim reports entered in 1960, 1963, and 1965 are not res judicata as the ward was not represented by a guardian ad litem at those hearings. ·

What effect, then, should be given to these interim reports? In our most recent opinions on the subject, we stated that ex parte interim orders are prima facie correct but may be modified at the final hearing. *In re Deming*, 192 Wash. 190, 73 P.2d 764 (1937); *Grady v. Dashiell, supra.* The guardian argues that this rule places the burden upon the ward to come forth with evidence challenging the interim accounts.

■ Our earlier cases all stated the rule to be that there is nothing final about interim orders entered at ex parte hearings. *See In re Gardella*, 152 Wash. 250, 277 P. 846 (1929); *In re Rohne*, 157 Wash. 62, 288 P. 269 (1930); *Mathieu v. United States Fid. & Guar. Co.*, 158 Wash. 396, 290 P. 1003 (1930); *In re Carlson*, 162 Wash. 20, 297 P. 764 (1931); *Goodwin v. American Sur. Co.*, 190 Wash. 457, 68 P.2d 619 (1937). Our use of the words "prima facie" in *In re Deming, supra*, did not signal a deviation from these earlier cases, but merely meant that an interim order would stand without further proof if not challenged at a final hearing. Disallowances of expenditures approved at interim hearings were affirmed in both *In re Deming, supra*, and *Grady v. Dashiell, supra*, without mention of a presumption favoring the interim reports which required the ward to come forward with evidence. To require the ward to come forward now with evidence challenging expenses which were made years ago when the ward was a mere child would be manifestly unfair. The ward is entitled to her day in court without this unusual burden.

· ■ The ward by her prayer for an accounting has challenged all the expenditures made from the guardianship

estate. The effect of this challenge is to require the guardian to fulfill her statutory and common law duty to fully account at the final hearing, irrespective of the orders entered ex parte at interim hearings. The guardians duty to account obligates her to establish both the necessity of her expenditures, and the fact that they were actually made. Some corroborating evidence in addition to the guardian's testimony is necessary to prove that expenditures were, in fact, made. *Disque v. McCann*, 58 Wn.2d 65, 360 P.2d 583 (1961). Although this corroborating evidence would normally be supplied by vouchers and receipts,[1] other forms of evidence may be sufficient.

The second general issue raised by the ward concerns the expenditures made from the guardianship estate, including the $250 per month support allowance. Expenditures totaling $27,173.48 were approved by the trial court. Many of these expenditures were also reviewed and approved in the three earlier ex parte hearings.

■ We have repeatedly stated that it is the duty of parents to support their children, and courts should allow expenditures from a child's estate for its support only in extreme cases when the parents are unable to provide support. *In re Rohne, supra; In re Deming, supra; In re Ivarsson,* 60 Wn.2d 733, 375 P.2d 509 (1962).

There is evidence that Mr. Mathews, the ward's stepfather, earned between $4,000 and $5,000 a year throughout his marriage to the guardian. With this he would have had to support the guardian and her five children. Mr. Mathews testified that the guardian occasionally took part time sales and babysitting jobs in an effort to supplement the family income. There is ample evidence to support the conclusion that the parents' income would have been inadequate to support the family without a support allowance from the ward's funds.

■ The guardian did not keep records of how the sup-

<hr />

[1]Note that the 1965 act (effective July 1, 1967) eliminates the prior statutory requirement that vouchers be filed to substantiate expenditures. RCW 11.92.040. This change merely conforms to our holding in *Disque v. McCann*, 58 Wn.2d 65, 360 P.2d 583 (1961).

port allowance was spent, and it was evidently mixed with the general household funds. It is not necessary, however, that the guardian record every item purchased with the support allowance. *See In re Ivarsson, supra,* 60 Wn.2d at 743. A reasonable amount each month for general petty cash type category out of a support allowance is properly credited to the guardian without further evidence, as long as the amount is neither extravagant nor obviously being misused. *In re Ivarsson, supra.*

■ We cannot place our blanket disapproval upon expenditures of a ward's funds for the support of the whole family rather than just for the ward personally. The maintenance of one child on a higher standard of living than the others could promote family discord. *See In re Ivarsson, supra.* We hold that the trial court had sufficient evidence before him to justify the finding that the amount of the monthly support payment was reasonable. The approval of the support allowances as listed in the guardian's reports is affirmed, subject to the corroborating proof of expenditures as to all except such portion thereof as the court finds is properly within a reasonable petty cash category.

In addition to the support allowances, the trial court approved and gave the guardian credit for expenditures of $3,620.48.[2] Some of these expenses, such as the Washington attorney's fees, appear to have been corroborated by independent testimony. The surety bond premiums were stipulated as correct at trial. Other expenses, however, do not appear to be corroborated by evidence in addition to the guardian's testimony. We are especially dubious of the "miscellaneous" accounts totaling more than $400. Miscellaneous expenses for the ward's support should have been included within the lump sum support allowance. Other expenses to make this total should be definitely identified and substantiated.

---

[2]This amount represents the total expenses allowed by the trial court in its conclusions of law, less the support allowances discussed above, expenses of a hearing in March, 1962 (discussed later), the ward's share of the cost of a Volkswagen as adjusted by the trial court, and the cost of some Boston Trust stock. The latter two items are not here challenged by the ward.

Although, as we noted in *Disque v. McCann, supra,* we do not ordinarily give a litigant two opportunities to prove his case, since this case must be remanded, the guardian will be allowed, upon remand, to introduce evidence in support of these various expenditures. Any such expenditures not corroborated by evidence other than the testimony of the guardian either at the first trial or upon rehearing should be disallowed.

The requirement of corroborating evidence at this late date may place a heavy burden upon the guardian. However, we need only point out that this burden would not exist if the guardian had kept proper records and receipts. The papers which the guardian has presented to the trial court and during the interim hearings hardly rise to the dignity of an accounting. The evidence corroborating the necessity for and the actual spending of all the expenses listed on the guardian's interim reports, including the support allowances, has been skimpy or nonexistent. However, it appears that this state of affairs is not the result of any deliberate plan to defraud the ward, but is just the result of incredible carelessness by the guardian. Therefore, while we do not condone these methods of accounting, proper expenses should be approved upon the receipt of some corroborating evidence.

The court also approved a reported expenditure of $453.80 which the ward claims should have been disapproved. In March, 1962, a special hearing was held to determine whether corporate shares of the ward could be pledged as collateral on a loan to the guardian and her husband. During this hearing, the ward was represented by a guardian ad litem. The resulting order granted approval to pledge the stock and granted $150 in fees to the guardian ad litem. Later, the interim order entered in May, 1963, reapproved the fee for the guardian ad litem and approved an expense of $303.80 for attorney's fees incurred for the 1962 hearing. It is clear that these funds were expended for the guardian's benefit and not the ward's. However, $150 of this amount was approved at a hearing at which the ward

was represented by a competent guardian ad litem. Although no notice of the 1962 hearing was given the ward, the guardian ad litem was given notice and appeared. Under these circumstances we do not consider actual notice to a minor ward a prerequisite to the res judicata effect of the hearing. Therefore, the allowance of the $150 guardian ad litem's fee is res judicata and, absent a showing of fraud, may not be collaterally attacked in this action. *E.g., see Farley v. Davis,* 10 Wn.2d 62, 116 P.2d 263, 155 A.L.R. 1302 (1941). The remaining $303.80, however, was improperly approved at an ex parte hearing and the trial court's approval of this expense is reversed.

The ward next contends that the judgment should have included the accountant's fee incurred in preparing this action. The trial court stated in its oral opinion that the services of a certified public accountant were not justified in preparing this action. We will not disturb that ruling.

 The ward also claims that interest should have been added to the judgment against the guardian. As a general rule a guardian should be charged with interest on all funds for which he has failed to account or has converted to his own use. *In re Anderson,* 97 Wash. 688, 167 P. 71 (1917); *In re Kelley,* 193 Wash. 109, 74 P.2d 904 (1938); *In re Deming,* 192 Wash. 190, 73 P.2d 764 (1937); *See* Annot. 72 A.L.R.2d 757 (1960). However, the imposition of interest in judgments against guardians is governed by general equitable principles. We do not believe interest should be imposed upon those amounts which were approved by the interim orders, but disallowed in this action. The guardian could not know for certain that these amounts were wrongfully spent until judgment is entered in this case. It would be unfair to charge her with interest prior to final judgment. *See In re Deming,* 192 Wash. at 228-30. Therefore, no interest should be charged on that portion of the judgment resulting from expenses which were approved in interim reports, but disallowed at the final hearing. The judgment

includes $4,278.73 in unaccounted funds.[3] The guardian would have been aware of this shortage if she had maintained proper accounts. She should be charged interest on such amount. The cause of this shortage is unexplained and thus there is no "time of conversion" from which to assess the interest. *See In re Deming, supra.* The guardianship estate, however, contained more than the missing amount at the beginning of the Washington guardianship, and the poor record keeping practices of the guardian which contributed to the loss have evidently continued for the duration of the guardianship. Therefore, interest on that portion of the judgment not arising from expenditures approved by interim orders should be included. The guardian may show a time or times of conversion from which date or dates interest shall run, but if she fails so to do, such interest shall commence October 11, 1957. *See* 72 A.L.R.2d 787 n.9 (1960).

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

HUNTER, C. J., HILL and HAMILTON, JJ., and RUMMEL, J. Pro Tem., concur.

---

October 3, 1969. Petition for rehearing denied.

---

[3]This amount is the difference between the receipts and expenditures shown in the guardian's reports, less cash on hand. It is a raw unexplained shortage. The actual amount is subject to the court's final determination on remand.