IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MATTER OF THE GUARDIANSHIP OF ANNA MAY BLACK. | ) ) ) ) ) ) ) ) ) ) | No. 35653-1-III<br><br>UNPUBLISHED OPINION |

FEARING, J. — The superior court denied the application of Lori Sorensen, guardian of the incompetent person Anna May Black, for payment, from Black's trust assets, of attorney fees incurred by the guardian to the lawyer purportedly representing the guardian. Because findings of fact support the superior court's conclusions that the lawyer represented Anna May Black, not the guardian, and because findings of fact support the superior court's conclusion that Lori Sorensen inserted herself into the affairs of the estate of Anna May Black when she had no interest as the guardian of the person in estate affairs, we affirm.

FACTS

This appeal concerns the payment of attorney fees primarily for the services of attorney William Buckholdt, but also to a minimal degree services of other members of

Buckholdt's law firm purportedly to Lori Sorensen in her role as guardian of the person of Anna May Black. We write this opinion as if William Buckholdt performed all services.

Before describing appellant Lori Sorensen's role as guardian of the person of Anna May Black and her incurring of attorney fees, we outline estate planning completed for Anna May Black and her now deceased husband, Jack P. Black, and we summarize current litigation between the couple's two children. The marital couple bore two children, Deborah and John.

On May 23, 2013, Anna May Black and Jack P. Black executed the second amendment and restated living trust of Jack P. Black and Anna May Black (the trust or living trust) instrument. The living trust appointed Jack Black and Anna May Black as the initial co-trustees, with one of them to serve as sole trustee in the event the other could no longer serve. The trust directed that, in the event one of the Blacks became incapacitated, the trustee would, in his or her discretion, distribute so much of the income or principal "as the Trustee deems best for the health and support in reasonable comfort of the survivor." *See* Clerk's Papers (CP) at 105. The Blacks placed nearly all of their assets into the trust, including their residence "Linden House." CP at 97. The trust provided that "the Trustee in the Trustee's absolute discretion may sell the property and replace it or rent or lease another residence suitable for the surviving Grantor as the Trustee deems appropriate." CP at 107. Beneficiaries of the trust, after the death of the

2

last surviving spouse, included children Deborah and John and Jack P. Black's and Anna May Black's grandchildren.

Anna May Black thereafter developed vascular dementia. Prior to his death and while he was still trustee of the living trust, Jack P. Black directed the Blacks' daughter, Deborah, to place Anna May in Summer Wood Alzheimer's Care Center.

On December 2, 2013, Jack P. Black executed a last will and testament, even though all of his assets sat in the living trust. The will sought to exercise a special power of appointment that bestowed $250,000 immediately following his death to his daughter Deborah. Jack P. Black died on December 12, 2013.

In December 2013, Anna May Black's physician declared her incompetent to manage the living trust. The death of Jack Black and the incapacity of Anna May Black left the couple's children, Deborah and John, as co-trustees. Because of a conviction for a felony, John Black was disqualified from serving in a fiduciary capacity as trustee. Lee Nordstrom substituted for John as co-trustee.

On March 17, 2014, Deborah Black filed a petition to probate Jack P. Black's December 2, 2013 will under Grant County Cause No. 14-4-00042-5. John Black filed an objection to the validity of the will in the probate proceeding.

On April 8, 2014, John Black filed a petition, under a second cause number Grant County Cause No. 14-4-00050-6, to remove Deborah Black from the position of co-trustee of the living trust. An invoice later submitted by William Buckholdt indicates that

Buckholdt represented Anna May Black in March 2014 and met often with John regarding the removal of Deborah as trustee.

On May 22, 2015, the Grant County Superior Court appointed Lori Sorenson as the guardian of the person of Anna May Black under a third cause number, Grant County Cause No. 14-4-00036-1. The trial court specifically declined to also appoint Sorensen as the guardian of Anna May since Black and her deceased husband had placed nearly all of their assets in the living trust and had given the trustees broad discretion to manage those assets. The trial court ordered that the trust would remain unaffected by the appointment of the guardianship of the person. The co-trustees of the living trust, at the time of the appointment of Lori Sorensen as the guardian of the person, were Deborah Black and Lee Nordstrom. The guardianship proceeding is the suit now on appeal.

In appointing a nonfamily member as guardian of the person, the superior court explained that it desired to reduce continuous conflict between Anna May Black's children, Deborah and John. Deborah Black sought to be the guardian of the person, but she and her brother bickered, and the constant conflict between the two troubled Anna May. Because the guardian of the person did not have the powers or obligations of a guardian of the estate, Lori Sorensen was not required to post a bond, file financial reports, inventory Anna May's assets, or make disbursements.

Although the superior court determined that no guardian of Anna May Black's estate was necessary, the guardian of the person, Lori Sorensen, communicated often

4

with John Black regarding trust issues, met with attorneys to review trust documents on July 27, 2015, assessed Linden House for remodeling on July 30, 2015, and met with contractors to plan remodeling of Linden House on December 4, 2015. Remember that the living trust directed that the trustees manage Linden House.

The few assets of Jack P. Black estate outside the living trust were insufficient to pay the $250,000 bequest to Deborah Black mentioned in Jack's will. John Black, in turn, objected to the living trust funding of the $250,000 bequest to Deborah. On September 11, 2015, Deborah Black filed a petition, under a fourth cause number, Grant County Cause No. 15-4-000128-4, seeking a court order directing the trust to fund the bequest. At that time, Deborah remained a co-trustee of the trust. Lori Sorensen, as the guardian of the person, inserted herself into the litigation concerning the bequest and hired William Buckholdt to assist her.

On December 2, 2015, John Black demanded an accounting from the trustees of the second amendment and restated living trust of Jack P. Black and Anna May Black. He filed suit to gain the accounting. Lori Sorensen, as guardian of the person of Anna May Black, inserted herself into the litigation, hired William Buckholdt to assist in the litigation, and incurred attorney fees as a result of hiring Buckholdt.

On December 9, 2015, John Black filed a second petition, under a fifth cause number, Grant County Cause No. 15-4-00168-1, to remove Deborah Black as a co-trustee of the living trust. He also sought an order to eject Deborah Black from Linden House

and an order for an accounting. Lori Sorensen, guardian of the person of Anna May

Black, participated in the motion to remove and the ejection action, and hired William

Buckholdt to assist her. Sorensen filed a declaration supporting John's motion to eject

Deborah from the trust property. The superior court ordered the disputes concerning

payment of the $250,000 to Deborah Black, concerning ejectment of Deborah from

Linden House, and concerning Deborah's removal as co-trustee of the living trust to

undergo mediation.

On January 19, 2016, Lori Sorensen, through William Buckholdt, filed a motion

for an order naming herself as a person of interest in the litigation to remove Deborah

Black as trustee, to eject Deborah Black from Linden House, for distribution of a

$250,000 bequest to Deborah, and for an accounting of trust assets. The trustees opposed

Sorenson, as guardian of the person, appearing on behalf of the interests of Anna May

Black in the various proceedings. The trustees instead asked the court to appoint a

guardian ad litem to represent Anna May in the legal proceedings. Lori Sorensen

objected to the appointment of a guardian ad litem.

The living trust trustees' attorney twice notified William Buckholdt that Lori

Sorensen acted outside the scope of her authority as guardian of the person by

participating in the litigation and motions among the trust, Deborah Black, and John

Black. In response, Buckholdt proposed that the trust stipulate to the appointment of a

guardianship of the estate with Sorensen acting as guardian of both the person and the

6

estate, despite the superior court previously declaring no guardian for the estate being needed. After the trust responded that appointment of a guardian ad litem was the appropriate solution, Sorensen filed a motion, in this pending guardianship action, to modify the guardianship and to permit her to represent Anna May Black in the litigation.

Attorney fee invoices from William Buckholdt indicate that Lori Sorensen initially intended to file a petition for a guardianship of the estate but, after reviewing procedural requirements, opted to style the request to become guardian of the estate as a motion to modify her guardian role rather than a petition. By recharacterizing the request, Sorensen avoided the stringent procedural process required for appointing a guardian of the estate. Sorensen personally served, on Anna May Black, Sorensen's motion to be appointed guardian of the estate, and Sorensen attempted to explain the motion to Anna May despite the latter's incompetency. On April 21, 2016, the superior court entered an order denying Lori Sorensen's motion to become guardian of the estate and instead appointed Richard Perednia as guardian ad litem, in all pending litigation, for Anna May Black.

On April 11, 2016 and in advance of mediation, Richard Perednia wrote an e-mail to Lori Sorensen that read:

> Thank you very much for the information you provided me over the weekend. I have reviewed it and I believe this will be very helpful at mediation. I also want to let you know that I spoke to Jeff Ropp and I recommended that you be present at the mediation in spite of Deb having taken the position that you have no business being there. I believe you, as guardian of the person, have standing and that your input is important to resolve this matter. Secondly, I talked to your counsel, William Buckholt,

and I think it might be helpful to either have him there or be available by telephone. I certainly hope you can be at the mediation. Do you think it would be helpful if I spoke to the director at Summerwood to obtain further information?

CP at 236.

In advance of mediation, William Buckholdt, as attorney for Lori Sorensen, wrote

a letter to prominent Spokane mediator Frank Hoover. In response, the attorney for the

trustee of the living trust wrote to Buckholdt:

> We are in receipt of your letter to Mr. Hoover. It was unexpected and, frankly, inappropriate. Your client has been allowed to attend mediation as an observer only at the suggestion of Mr. Perednia. She is not a party to any proceedings and has no power to bind any party.
> The issues you raise in your letter to Mr. Hoover are not issues that were ordered into mediation and, because they purport to concern only guardianship issues, are not appropriate subjects for mediation. Further, your attempt to place moving Anna May Black out of Summerwood into contention is directly contrary to Ms. Sorenson's proposal of March 30, 2016, which the parties have already accepted. Your attempt to resurrect an issue that should be considered within the guardianship matter after an evaluation by a professional as to what living condition would be in Anna May Black's best interests is puzzling and disappointing.
> Although we have a great deal of respect for you and your firm, your letter to Mr. Hoover has all the hallmarks of machinations designed to increase the chances that Ms. Sorenson's unauthorized attorney fees will be paid by the Trust. Your gambit has merely eliminated any misgivings the Trustees may have had concerning an objection to an application for fees.
> Ms. Sorenson's continuing attempts to interject herself into matters beyond the scope of her authority is contrary to the orders of the court, the law, and her duties as a professional guardian. She is welcome to attend mediation as an observer and to provide her perspective to Mr. Perednia, but she is not a party and should not appear with counsel unless she proposes to personally pay a portion of Mr. Hoover's fee and the entirety of your own fee. Further, she should not appear at mediation with the purpose of raising at the eleventh hour issues that are outside the scope of the

8

> mediation and more properly considered after following legal procedures in place to protect Anna May Black's interests and due process rights.
>
> Please reconsider both Ms. Sorenson's position and your evident intent to attend mediation as her counsel. We also ask that you again remind Ms. Sorenson that she is not a party and has no authority to represent Anna May Black in this matter.

CP at 119-20.

Mediation involving the disputes among John Black, Deborah Black, the estate of Jack Black, and the living trust occurred on April 22, 2016. Despite Lori Sorensen's status as an observer, William Buckholdt met with counsel for John Black the day before mediation and appeared with Sorensen at mediation.

During mediation, Lori Sorensen, as guardian of the person, advocated to be appointed as representative payee for Anna May Black's payment from Social Security and to obtain a monthly advance on her fees from the living trust. The parties reached an agreement as to who should serve as trustee of the trust. The parties reached no agreement to resolve Deborah Black's claim to a specific bequest of $250,000.

The recitals of the settlement agreement do not list Lori Sorensen as a party to the mediation or to the settlement agreement. The recitals list Anna May Black as appearing at mediation only through her guardian ad litem, Richard Perednia. Nevertheless, the agreement mentioned responsibilities of and payment to Lori Sorensen, as guardian of the person. The agreement reads, in part:

> With regard to Deborah Black acting as Trustee and the resolution vis a vis her relationship with John P. Black in the Trust, the following

9

matters have been determined and agreed to: Lee Nordstrom will resign as Co-Trustee in favor of James P. Spurgetis who will act as Independent Co-Trustee with Deborah Black.

. . . .

With regard to the care of Anna May Black, the following resolutions have been reached:

1. Although Lori Sorensen has not been appointed as guardian of the estate of Anna May Black, she will be appointed as the Representative Payee for the social security benefits which will be paid into an account which she shall maintain as a Representative Payee. Lori Sorensen shall be free to utilize these funds to pay for any incidental expenses including but not limited to clothing, lunches, haircuts, pedicures, manicures, makeup, toiletries, gifts, and any other items which may be necessary or desirable for the happiness and well-being of Anna May Black including taking family members out to meals. Lori Sorensen will keep track of these expenses and will prepare an accounting to be submitted to the Trustees every two months or she can give the Trustee access to her accounting records on-line. To the extent that the monthly social security benefits exceed monthly expenditures by an amount of less than $1,000.00 per year then said funds shall be retained in the Representative Payee account with any amount in excess of $1,000 per year shall be transferred to the Trustees. . . .

2. Lori Sorensen shall be paid automatically by the Trust an advance toward her guardianship fees of $750.00 per month. She will then in accordance with the cycle of the guardianship action prepare and ask approval for her fees. To the extent her actual fees are in excess of the sum of these annual advances, the Trust will within 30 days pay over the additional amount due upon court approval. To the extent they are less than the amounts advanced, then the amount paid to Lori Sorensen will be credited against her monthly payment until the excess is paid off.

3. The Trust will pay directly for all other caregiving expenses of Anna May Black which shall include the room rent and charges at Summerwood. . . .

4. The Trust will pay the fees of Lori Sorensen to attend this mediation and the costs and fees of Richard W. Perednia to the end of this mediation. Fees of Lori Sorensen's counsel will be submitted and if approved paid by James P. Spurgetis.

CP at 955-58. Lori Sorensen signed the agreement as guardian of Anna May Black.

William Buckholdt signed as attorney for Sorensen. Richard Perednia signed the agreement as guardian ad litem for Anna May Black.

Deborah Black resigned from her position as co-trustee on May 6, 2016. As a result, Lee Nordstrom became the sole trustee until such time as the successor trustee, James P. Spurgetis, agreed to replace him. Spurgetis awaited the completion of the pending lawsuits filed by John Black before substituting as successor trustee. Spurgetis is now the sole trustee of the living trust, but we do not know when he assumed that role.

On June 10, 2016, William Buckholdt forwarded his fee invoice for all attorney's fees and costs, in the amount of $33,377.78, to the trustee and guardian ad litem, but redacted all descriptions of the work performed.

PROCEDURE

On August 23, 2016, Lori Sorensen submitted her first annual report, by which she, in part, sought approval of her guardian fees. Lee Nordstrom then still remained sole trustee of the living trust. Since no one had paid William Buckholdt's fees, Sorensen also sought, through her report, payment from the living trust of $33,377.78 for services provided by Buckholdt from October 15, 2015 to May 22, 2016. Sorensen filed Buckholdt's attorney fees invoice under seal, while citing GR 22(b)(8). The guardian included in her request for attorney fees all fees incurred in her attempts to involve herself in the management of the trust, appear in litigation on behalf of Anna May Black, oppose appointment of a guardian ad litem, and have herself appointed guardian of Anna

11

May's estate. Invoices from William Buckholdt listed "Anna May Black" as the client. The client number echoed the client number for services performed by Buckholdt for Anna May before the trial court declared her incompetent. The trustee and Deborah Black opposed the application for payment of William Buckholdt's fees.

When the trustee attempted to obtain copies of the sealed invoices in order to respond to the guardian's request, Lori Sorensen directed that the fee invoices should not be released to any party. She did not withdraw her request for payment, however.

The trustee filed a motion to unseal the attorney fees invoice. The superior court ruled that filing under seal was inappropriate and imposed sanctions of $500 against Lori Sorensen and William Buckholdt. The court ordered disclosure of the fee invoice and directed that a hearing on the guardian's first annual report would be heard after the parties had an opportunity to review the invoices and respond to the application for payment of the fees.

Lori Sorensen, as guardian of the person, did not reschedule a hearing to approve her first annual report. Instead, she filed a motion to enforce the CR 2(a) agreement, which motion, in turn, sought the immediate removal of Lee Nordstrom as trustee. On November 18, 2016, the trustee obtained an order to show cause requiring Lori Sorensen, as guardian of the person, to appear and explain why the court should not review her first annual report. Sorensen objected and argued that the first annual report should not be reviewed by the court until after the court ruled on her motion to remove Lee Nordstrom

as trustee. Sorensen argued that the successor trustee, and not the court, held authority to determine her entitlement to compensation for attorney fees.

On December 2, 2016, the superior court commissioner heard argument on the order for show cause and the guardian's request for payment of $33,377.78 in attorney fees and costs. The trustee of the living trust argued that Lori Sorensen's authority, as guardian of the person, was limited by RCW 11.92.043, that William Buckholdt, according to his fee invoice, actually represented Anna May Black, and that, if the guardian of the person Buckholdt's client, Buckholdt had a conflict of interest because of his prior representation of Anna May Black in a related matter.

The superior court commissioner found that William Buckholdt's client was Anna May Black, not Lori Sorensen. The superior court also found that Sorensen, as guardian of the person, acted outside the scope of her guardianship powers and lacked authority to incur $33,377.78 in attorney fees on behalf of her ward. The court ordered that any appointment of counsel for Anna May in the future must be by order of the court before any fees are incurred.

The superior court commissioner entered the following findings:

> 1. The role of the Guardian of Person and her duties in that capacity are defined in RCW 11.92.043.
> 2. The Guardian of Person engaged [William Buckholdt] for the purpose of representing her ward in litigation.
> 3. Neither the Guardian of Person nor [William Buckholdt] sought an order authorizing the representation or appointing [William Buckholdt] as attorney for the ward.

13

4.  The Guardian of Person sought to have herself substituted as a party in litigation in which the ward was a named or interested party.

5.  The Guardian of Person has no authority to represent the ward in legal proceedings.

6.  Only a guardian of estate or guardian ad litem may represent an incapacitated person in litigation.

7.  The Guardian of Person filed a motion seeking to be appointed guardian of estate, but this Court ruled it was not appropriate to expand her role.

8.  The Guardian of Person engaged in activities outside the scope of her authority, as defined by statute and this Court's Order, when she engaged [William Buckholdt] and attempted to represent her ward in litigation.

9.  The Guardian had no authority to incur $33,377.78 in attorney fees and costs and then expect those fees to be paid by the trust established for the care and maintenance of the ward.

CP at 479-80.  The court added the following order:

The role of the guardian of the person and her duties in that capacity are defined in RCW 11.92.043.  Nowhere is the guardian of the person allowed to represent the ward in legal proceedings.  That is left to the trustee of the estate or the guardian ad litem appointed for that purpose. This Court does not believe that the guardian of the person had any authority to incur substantial legal fees and then expect those fees to be paid by the trust.  The motion of the guardian of the person for an order requiring her legal fees to be paid by the trust is denied.

CP at 475-76.

On February 21, 2017, Lori Sorensen filed a motion for revision before a superior court judge as to the order denying payment from the trust of William Buckholdt's fees. On September 22, 2017, the judge affirmed the court commissioner's ruling.  The judge wrote:

4.  There is no meaningful distinction between fees incurred for the

Guardian of Person and fees incurred for Anna May Black, the incapacitated person whom the Guardian of Person serves. The purpose of the guardianship is to provide for Anna May Black's health and safety.

5. The language of RCW 11.88.045 is clear. By its terms it is not limited to attorney's fees incurred through actual litigation.

6. Together RCW 11.88.045 and 11.92.180 authorized the Guardian of Person to hire [William Buckholdt] only after securing court approval.

7. Such a reading of the statutes gives effect to both statutes and is necessary for RCW 11.88.045 and 11.92.180 to satisfy the procedural requirements of due process.

8. The only source of payment for [William Buckholdt's] fees is the assets of the Second Amended and Restated Revocable Living Trust of Jack P. Black and Anna May Black ("Trust").

9. Because the Guardian of Person did not seek court approval before engaging counsel, the beneficiaries of the Trust, including Anna May Black, and the Trustee were denied any opportunity to contest the need for [William Buckholdt's] services.

10. It would violate the due process rights of the beneficiaries to require [William Buckholdt's] payment out of funds in which the beneficiaries had a beneficial interest without providing the Trustee and the beneficiaries an opportunity to be heard.

11. The Guardian of Person argues in the alternative that she is entitled to compensation under equitable principles because Anna May Black benefited from the services of [William Buckholdt].

12. Equitable relief cannot be granted in contravention to statutory requirements.

CP at 611-12.

Despite the rulings regarding fees during the first year of the guardianship, Lori Sorensen, as guardian of the person of Anna May Black, later sought an order requiring the living trust to pay for William Buckholdt's fees incurred during the second year of the guardianship. Buckholdt claimed $50,924.96 in attorney fees and costs for this second year. The invoices show that Sorensen incurred most of the fees for services performed

15

by Buckholdt in attempting to recover fees incurred in the first year of the guardianship.

The invoices for the second year identified Lori Sorensen, as the guardian of the person

of Anna May Black, to now be the client. The invoices also assigned a new client

number.

The superior court judge denied the second request for payment of William

Buckholdt's fees by the trust. The superior court incorporated its previous rulings

regarding the application for fees for $33,377.78 for the first year.

## LAW AND ANALYSIS

### Prior Court Approval of Hiring of Attorney

The sole question on appeal is whether the trial court committed error when

denying both of Lori Sorensen's applications for payment, from living trust assets, of

attorney fees incurred to William Buckholdt.

Lori Sorensen's application for payment of attorney fees owed to William

Buckholdt arises from Sorensen's guardianship of the person of Anna May Black, an

elderly lady with dementia. Guardianships are created by the courts for the protection of

incapacitated persons, with the express goal that the scope of the guardianship should

extend only so far as is necessary to protect the incapacitated persons, so as to not unduly

interfere with that person's liberty and autonomy. RCW 11.88.005, .010(2). Once

appointed, a guardian remains under the general direction and control of the court. *In re*

*Guardianship of Cornelius*, 181 Wn. App. 513, 523, 326 P.3d 718 (2014). The court

retains ultimate responsibility for protecting the ward's person and estate. *In re Guardianship of Lamb*, 173 Wn.2d 173, 184, 265 P.3d 876 (2011). Concerning the responsibilities of a guardian, the courts require more jealous guarding of the interests of such helpless persons than those of other beneficiaries of trusts. *Disque v. McCann*, 58 Wn.2d 65, 67, 360 P.2d 583 (1961). The court remains the "superior guardian of the ward"; while the guardian serves as the agent of the guardianship court. *In re Guardianship of Knutson*, 160 Wn. App. 854, 864, 250 P.3d 1072 (2011) (quoting *Seattle First National Bank v. Brommers*, 89 Wn.2d 190, 200, 570 P.2d 1035 (1977)). The trustee of the Black living trust emphasizes these principles of guardianship law when asking this court to affirm the superior court's denial of Lori Sorensen's application for payment of attorney fees from the ward's and other beneficiaries' interest in the trust.

Lori Sorensen contends that the issue on appeal is whether a guardian is required to obtain court approval prior to retaining an attorney to represent the guardian in carrying out her duties. Sorensen then argues that the statutory law governing guardianships does not require court approval.

Two fatal flaws permeate Lori Sorensen's contention. Each flaw supplies an independent basis for affirming the superior court. First, the superior court found that William Buckholdt represented Anna May Black, not Lori Sorensen. Therefore, under RCW 11.88.045(2), Sorensen or Buckholdt needed to obtain court approval before the incurring of fees. Second, Sorensen seeks payment for fees for services incurred when

17

acting beyond her authority as guardian of the person.

Lori Sorensen mentions RCW 11.88.045(2) and then maintains that the statute has no application to her request for payment of fees from the trust for the services of William Buckholdt because the statute demands preapproval of fees only if the attorney represented the ward and Buckholdt represented Sorensen, not Anna May Black. The statute provides:

> During the pendency of any guardianship, any attorney *purporting to represent a person alleged or adjudicated to be incapacitated* shall petition to be appointed to represent the incapacitated or alleged incapacitated person. Fees for representation described in the section shall be subject to approval by the court pursuant to the provisions of RCW 11.92.180.

(Emphasis added.)

Lori Sorensen argues that, since William Buckholdt represented her as guardian of the person, RCW 11.92.180 governs instead. RCW 11.92.180 declares, in pertinent portion:

> A guardian or limited guardian shall be allowed such compensation for his or her services as guardian or limited guardian as the court shall deem just and reasonable. . . . Additional compensation may be allowed for other administrative costs, including services of an attorney and for other services not provided by the guardian or limited guardian. . . . In all cases, compensation of the guardian or limited guardian and his or her expenses including attorney's fees shall be fixed by the court and may be allowed at any annual or final accounting; but at any time during the administration of the estate, the guardian or limited guardian or his or her attorney may apply to the court for an allowance upon the compensation or necessary expenses of the guardian or limited guardian and for attorney's fees for services already performed.

RCW 11.92.180 does not require advance approval of the appointment of an attorney or of payment of fees. The court may approve payment after incurment of the fees.

Lori Sorensen correctly reads RCW 11.88.045(2) to require court approval for the hiring of an attorney to represent the ward, not the guardian of the ward. Nevertheless, Sorensen ignores a critical finding of fact entered by the superior court. The superior court commissioner entered finding of fact 2, which reads: "The Guardian of Person engaged [William Buckholdt] for the purpose of representing her ward in litigation." CP at 507. The superior court judge adopted the court commissioner's findings when ruling on Lori Sorensen's first application for payment of fees. The superior court judge adopted the judge's ruling on the first application for fees when denying the second application for payment of fees.

Lori Sorensen does not assign error to finding of fact 2 in her appeal brief. RAP 10.3(g) requires a separate assignment of error for each finding of fact a party contends was improperly made and a reference to the finding by number. *State v. Roggenkamp*, 115 Wn. App. 927, 943, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005). Findings, to which the appellant assigns no error, become the established facts of the case. *State v. Roggenkamp*, 115 Wn. App. at 943.

To avoid her failure to assign error to the finding of fact, Lori Sorensen characterizes the finding of fact as a conclusion of law. She argues that the court commissioner wrongly identified the declaration of whom William Buckholdt

19

represented as a finding of fact. A finding of fact that is actually a conclusion of law will be treated as a conclusion of law and will stand if other findings of fact suffice to support such a conclusion. *Miller Lumber Co. v. Holden*, 45 Wn.2d 237, 245, 273 P.2d 786 (1954). Nevertheless, Sorensen cites no authority that she need not assign error to a finding of fact erroneously classified by the trial court as a finding rather than a conclusion of law.

Findings of fact are a determination of whether the evidence shows that something occurred or existed. *Casterline v. Roberts*, 168 Wn. App 376, 382, 284 P.3d 743 (2012). A determination made by a trial court through the process of legal reasoning from the significance of evidentiary facts is a conclusion of law as opposed to a finding of fact. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197-98 fn.5, 584 P.2d 968 (1978).

Lori Sorensen contends that the portions of the superior court orders that refer to representation of Anna May Black, not Sorensen, do not establish something that occurred or existed as determined from the evidence, but rather employed a process of legal reasoning from the facts and statutes applicable to this matter. We disagree. The superior court relied on no case law or statute when determining that William Buckholdt represented Anna May Black. Presumably the superior court relied on the evidence as to the work performed by Buckholdt. Also, the superior court probably relied on the fact that the invoices prepared by Buckholdt identified Anna May, not Sorensen, to be the

client.  Sorensen does not contend any error occurred in the identification of the client on the invoices.

The question of who is one's client primarily involves a factual question of the intent of the attorney and other parties, not a legal question based on applying facts to law.  Generally, the formation of an attorney-client relationship is a question of fact. *Flatt v. Superior Court of Sonoma County*, 9 Cal. 4th 275, 283, 885 P.2d 950, 36 Cal. Rptr. 2d 537 (1994).  Intent and conduct are critical to the formation of an attorney-client relationship.  *Chih Teh Shen v. Miller*, 212 Cal. App. 4th 48, 57, 150 Cal. Rptr. 3d 783 (2012).

Lori Sorensen, despite asserting that the record clearly shows that William Buckholdt represented her in her capacity of guardian, does not identify the work actually performed by Buckholdt that rendered the record clear.  At least for part of the time, Buckholdt assisted John Black in attempting to remove Deborah Black as a co-trustee of the trust, even though Sorensen, as guardian of the person, had no role in administering the trust.  Buckholdt also prepared a declaration for the signature of Sorensen and in support of John Black's motion to eject Deborah Black from trust property, when Sorensen played no role in administering the home.

Lori Sorensen asserts that the superior court did not make a factual finding that William Buckholdt directly represented Anna May Black.  Again, the language of the finding is: "The Guardian of Person engaged [William Buckholdt] for the purpose of

21

representing her ward in litigation." CP at 507. Perhaps Sorensen distinguishes between the purpose of the hiring of an attorney and the actual performance of the work by the attorney. Regardless, the finding of fact strongly implies that Buckholdt performed his services for Anna May Black. Findings may be sufficient even if they are implicit in the trial court's formal written findings of fact. *State v. Budd*, 185 Wn.2d 566, 578, 374 P.3d 137 (2016).

Assuming the trial court erred and William Buckholdt represented Lori Sorensen in her role as guardian of the person, Sorensen's appeal still fails if this court agrees with the superior court that Sorensen stepped outside her parameters as guardian of the person. In finding of fact 8, the superior court commissioner wrote: "The Guardian of Person [Lori Sorensen] engaged in activities outside the scope of her authority, as defined by statute and this Court's Order, when she engaged [Buckholdt] and attempted to represent her ward in litigation." CP at 507. A court may not award fees based solely on work performed, but must determine the need for the work done and whether it benefited the guardianship of person. RCW 11.92.180; *In re Guardianship of McKean*, 136 Wn. App. 906, 918, 151 P.3d 223 (2007).

The superior court found that Lori Sorensen stepped beyond her authority as guardian of the person when hiring William Buckholdt. Sorensen asked to be appointed guardian of the estate, but, when the superior court denied her application, Sorensen took steps regarding the financial affairs of Anna May Black anyway. She inserted herself in

the dispute regarding the $250,000 bequest to Deborah Black. She assisted John Black's efforts to remove Deborah as co-trustee of the trust. She also sought eviction of Deborah from Linden House, despite the home playing no role in the personal care of Anna May. Sorensen met with contractors for remodeling the home. Buckholdt sent a letter to the trust demanding an accounting of the trust during a time that Deborah acted as attorney-in-fact for Anna May.

The law distinguishes between a guardian of the person and a guardian of the estate. RCW 11.88.010, .020(1); RCW 11.92.040, .043; *Poling v. City Bank & Trust Co. of St. Petersburg*, 189 So.2d 176 (1966). A guardian of the person is one lawfully vested with the care of the person of a minor or incompetent, while a guardian of the estate is entrusted with the control of the property of a minor or incompetent. *Daniels v. Metropolitan Life Insurance Co.*, 135 Pa. Super. 450, 5 A.2d 608 (1939). RCW 11.92.043 outlines the duties of a guardian of the person, and the duties do not include hiring counsel to assist the ward.

In support of her contention that she needed William Buckholdt's assistance as guardian of the person, Lori Sorensen contends she was an interested party in the litigation between the two children, Deborah and John. Nevertheless, she does not explain her interest in disputes concerning whether Deborah will receive a specific bequest or be removed as a co-trustee. The superior court appointed a guardian ad litem to represent Anna May Black's interests in all litigation.

23

As she did with the critical finding of fact regarding the client of William Buckholdt, Lori Sorensen contends that the finding regarding her engaging in activities outside the scope of her authority was a conclusion of law, not a finding of fact. We are inclined to agree with this assertion. The trial court's finding does not limit itself to what steps Sorensen took, but includes an analysis as to the legality of the steps.

We nonetheless affirm the superior court's conclusion that Lori Sorensen acted outside her authority when incurring fees for the services of William Buckholdt. We review conclusions of law to determine if findings of fact support the conclusions. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). The trial court entered findings that Anna May Black, not Lori Sorensen, was Buckholdt's client. The finding that Sorensen operated outside her authority is based in part on overwhelming underlying evidence of steps Sorensen took. William Buckholdt, on behalf of Lori Sorensen, asked for an accounting from the trust although Sorensen had no right to an accounting since she was not a guardian of the estate. Sorensen, with the assistance of Buckholdt, interfered in financial litigation involving Deborah and John Black, despite her lack of standing. Buckholdt hired contractors for Linden House despite the trustee holding authority over management of the property.

Lori Sorensen observes that the superior court twice awarded her the guardian fees she sought. Sorensen then argues that the trial court must have found that all of her work performed related to her role as guardian of the person, not outside her role, nor in a

24

usurper role of guardian of the estate. Sorensen thereby concludes that the trial court must have also found that all work performed by her attorney, William Buckholdt, related to her role as guardian of the person.

We discount Lori Sorensen's argument for several reasons. First, the argument assumes that the trial court could not enter inconsistent findings of fact. Second, assuming the findings are inconsistent, this reviewing court could just as easily conclude that the superior court erred in granting Sorensen all of the guardian fees she sought. Overwhelming evidence supports a finding that she engaged in acts that concerned the estate of Anna May Black, not the personal care of Black. Third, William Buckholdt could logically and primarily have performed work regarding the estate of Anna May Black, while Sorensen primarily performed work concerning the personal care of Black.

Lori Sorensen may contend in part that some of the services performed by William Buckholdt directly related to her role as guardian of the person. For example, she alleges that she hired Buckholdt due to difficulties in implementing the personal care plan for Anna May Black. Also, the mediation resulted in Sorensen being appointed as the payee of Anna May's social security benefits. Nevertheless, Sorensen does not identify how Buckholdt assisted in implementing a plan. Also, Sorensen does not segregate any fees incurred for the implementation of a plan or for mediation. Sorensen instead demands payment in full. If a party is entitled to payment in part for attorney fees incurred, that party must segregate the work performed for which the party is entitled to

25

reimbursement. *Manna Funding, LLC v. Kittitas County*, 173 Wn. App. 879, 900-01, 295 P.3d 1197 (2013).

We began our analysis by identifying two grounds on which to affirm the superior court. Those two alternatives conflate. Lori Sorensen, as guardian of the person, could only assist Anna May Black with regard to her personal and medical care and safety. She was not empowered to assist Black with regard to her estate or property. Sorensen sought to become the guardian of the estate, but the superior court refused. The guardian of the person should not be allowed to thwart the court's denial of her application to be guardian of the estate by inserting herself into estate affairs and then demanding reimbursement for fees incurred during her extraterritorial roam.

The parties dispute whether this reviewing court's standard of review is de novo or an abuse of discretion. We see no reason to resolve this dispute. Under either standard of review, this court should affirm the superior court.

The trial court also based its decision on the lack of due process afforded beneficiaries of the living trust by reason of Lori Sorensen's incurring of fees for which she seeks payment from the trust without those beneficiaries being afforded the opportunity to object to the incurment of fees in advance. To the contrary, the trust, on behalf of the beneficiaries, repeatedly warned Sorensen and her attorney that Sorensen risked paying the fees on her own because she worked outside the scope of her role as guardian. We need not address whether the attempt to gain payment from trust assets

violates the beneficiaries' due process rights since we affirm on other grounds.

Attorney Fees on Appeal

Lori Sorensen seeks an award of reasonable attorney fees and costs incurred on appeal. Presumably she asks for payment from the living trust assets.

Deborah Black, one of the beneficiaries of the trust and former co-trustee of the trust, seeks, against Lori Sorensen, reasonable attorney fees and costs incurred by her in this appeal. Trustee James Spurgetis also seeks recovery of his reasonable attorney fees and costs against Lori Sorensen. Guardian ad litem Richard Perednia and Deborah Black ask that the court impose, on Lori Sorensen, attorney fees incurred by the trustee.

RCW 11.96A.150 declares:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
> (2) This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts, decedent's estates and properties, and *guardianship matters*. . . .

We deny Lori Sorensen's request for fees on appeal since she does not prevail on appeal. Generally, the losing party should not be granted fees in the guardianship

proceeding. *In re Guardianship of Lamb*, 173 Wn.2d at 197 (2011).

The express language of RCW 11.96A.150 leaves attorney fee awards in cases resolving guardianship disputes to the court's discretion. *In re Guardianship of Lamb*, 173 Wn.2d at 197. The statute allows a court considering a fee award to consider any relevant factor. *In re Estate of D'Agosto*, 134 Wn. App. 390, 401-02, 139 P.3d 1125 (2006); *In re Estate of Burks*, 124 Wn. App. 327, 333, 100 P.3d 328 (2004). The ability to pay does not provide an equitable basis for the award. *In re Guardianship of McKean*, 136 Wn. App. at 920 (2007). Rather, equity requires some finding of fault that in fairness requires a party to pay. *In re Guardianship of McKean*, 136 Wn. App. at 920.

We grant an award of reasonable attorney fees and costs incurred on appeal in favor of Deborah Black and the trustee against Lori Sorensen. Black and the trust have needed to spend inordinate resources over what has become only a quest by an attorney for fees, when the attorney was warned not to become involved in disputes that did not involve his client. The attorney once represented Anna May Black and even designated Anna May as the client when allegedly working for the guardian. During the time that the attorney allegedly represented the guardian, Anna May Black had no ability to consent to any conflict of interest or to object to the action of the law firm because of her infirmity. We prefer that the trust assets not be expended in order to defend the claim of Lori Sorensen for attorney fees from the trust.

No. 35653-1-III
*In re Guardianship of Anna May Black*

CONCLUSION

We affirm the superior court's denial of an award, from the living trust assets, for Lori Sorensen of attorney fees incurred. We grant Deborah Black and the trust reasonable attorney fees and costs against Lori Sorensen on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, C.J.

29